# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | Case No. 18-cr-10450-MLW |
| **DJAVIER DUGGINS** | |

## MOTION TO REVIEW ORDER OF DETENTION

Now comes the Defendant, Djavier Duggins (hereinafter, "the Defendant" or "Duggins") by and through his counsel, respectfully moves this Court, pursuant to 18 U.S.C. sec. 3145(b) and 3145(f) to review the Order of Detention entered in this case on July 31st 2019, and as grounds for the request states the reasons below.

On November 28th 2019, the Defendant was indicted with a violation of 18 U.S.C. § 1962(d) – Conspiracy to Conduct Enterprise Affairs through a Pattern of Racketeering Activity. On the same day the Defendant was arrested, and on November 29th 2018, the government moved to detain him without bond. *Dkt. entry # 21.* On December 7th 2018, the Defendant consented to a voluntary order of detention without prejudice. *Dkt. entry # 42.* On July 29th, 2019 the Defendant moved for a hearing on his detention status. *Dkt. entry #71.* Following a hearing on July 30th, 2019 the Magistrate Judge (Boal), ordered him detained stating the following:

***Dangerousness***

The Defendant is an admitted "former" member of MS-13. He has two convictions for two violent offenses, before he states that he withdrew from the gang. One conviction was for an

assault by means of a dangerous weapon in 2010 – when he was 20 years old. The second was for an armed assault with the intent to murder in 2012 – when he was 23 years old. These temporally dated crimes have been alleged by the government to have been done while Mr. Duggins was a member of the criminal enterprise in question. These factors, albeit *pre-withdrawal*, appear to be at the crux of the Magistrate's reasons that Mr. Duggins poses a present danger.

### *Relevant information not included in dangerous finding*

Upon review of the minutes of the Detention Hearing (*Dkt. entry #86),* however, we see a wealth of information not included in Magistrate Boal's findings. In particular, and since his last crime in 2012, Duggins has **turned over a new leaf on life** – as during his arrest in 2018, Duggins confessed to law enforcement that he had withdrew from any membership within the alleged criminal enterprise.[1] To corroborate this claim of turning over a new leaf, Mr. Djavier Duggins presently stands before this Court as a 30 year old man, with no further convictions since his claimed withdrawal, and which is also coupled without any claims by the government that Duggins has committed any violent conduct since he withdrew.

Additionally, and to further support Duggins' contention that he withdrew, at the time of his arrest, Duggins was gainfully employed, working approximately 50 hours a week, and had an extended family (a serious girlfriend and three children) that he was taking care of. *See again, the testimony of J. Marcotte owner of Select Airport Parking – at page 57 of Dkt. entry 86; see also the testimony of C. Valladares, at pages 68-70.* The Defendant's days, according to the live testimony from both of the aforementioned witnesses consisted of going to work – toiling seven

---

[1] See the testimony of Mr. J. Marcotte, and C. Valladares, beginning at pages 54 and 65 of the detention transcript, respectively, and which speak about who Mr. Duggins is today. Upon review of the same, the Defendant suggests that we see a testament of a man who has certainly turned a corner, as it relates to a transformation from whom he was in a previous life.

days a week and sometimes working double shifts when he could get them, and where in between shifts he would be dropping off and picking up young kids from school.[2] None of the Defendant's present style of life is in factual dispute. In fact, Mr. Duggins' employer testified at the detention hearing, and not only confirmed Duggins' work schedule and stellar performance as an employee, but also told the Magistrate that because of Mr. Duggins' work ethic, he would be willing to re-employ him – even after hearing all about what the government has alleged about him, and indifferent to the same, claiming that "this is not the Djavier I knew".[3] This would suggest that perhaps the government's account is not only an uncorroborated distortion of who he presently is, but an unreliable one as well. Lastly, Mr. Duggins' girlfriend testified at the detention hearing as well, chronicling what she has seen since he has withdrawn from MS-13 – a real man and father, and in contravention to who Mr. Duggins was as a boy.[4]

***In light of the above -- why did the Magistrate find that presently, no member of the community, individually or at large, is safe?***

In spite of Mr. Duggins' new and improved lifestyle from yesteryear, the Magistrate thought otherwise. The Magistrate bases this belief upon the following claim:

> "The instant charges raises significant concerns as it suggests continued gang involvement"

*See page 4 of Magistrate's Boal's decision on detention.*

Upon review of the minutes from the detention hearing, we do see allegations upon which the government has relied to support its theory of the Defendant's alleged gang involvement. These allegations are as follows:

a) That he is the present leader of the SLS clique of MS-13; *Dkt. 86 at page 18.*

---

[2] *Dkt. # 86 at pages 57-58; 68-69.*

[3] *Id. at page 60.*

[4] *Id. at pages 68-73.*

b) Duggins has recruited a particular member – "Pervoso" to join MS-13; *Id. at 19.*

c) Telephonic communications between Mr. Duggins and other co-conspirators of unknown substance; *Id. at pages 32-34* and

d) In the aftermath of a murder committed by alleged members of the enterprise (where it is not claimed that he participated in), the Defendant checked the area to see if cameras were in the area; *Id. at page 22.*

The problem with this cache of evidence, is that the government has absolutely no evidence to corroborate it.[5] The Defendant of course, does not mean to suggest that the Government must have corroborating evidence at this stage. However, the weight of the evidence is still a relevant consideration for detention. *See 18 U.S.C. sec. 3142(g)(2).* In fact, the weight of the evidence has such a degree of importance, that it can serve as grounds for a reversal of a Magistrate's Order of Detention. See e.g., United States v. Simone, 317 F. Supp. 2d 38, 42 (2004) (Wolf, J.) (This court reversing a Magistrate's Order of Detention, where the order did not properly consider the weight of the evidence, and, particularly did not address at all the important evidence of the defendants' conduct since they were first charged with the crimes at issue). The Defendant claims that he finds himself similarly situated, as the weight of the evidence against him is paper-thin since his withdrawal from MS-13, and his most recent behavior in society was not considered.

  a. **The weight of the evidence against him is paper-thin.**

Frankly, when the Defendant states that the weight of the evidence against him is paper thin, what he means to say is that the weight of the entire evidence presented falls upon the shoulders of a confessed killer – Henri Salvador Guiterrez a/k/a – "PERVOSO" – a man whom the Defendant claims puffed and boasted about his crimes to a cooperating witness, and without

---
[5] *See pages 46-51of Dkt. entry #86 -- the testimony of FBI Agent Michael Little, who repeatedly failed to provide any information that the government's investigation had in their possession which corroborated any of the claims made by PERVOSO.*

one ounce of independent evidence to corroborate it. In essence, PERVOSO's puffery has made claims about Duggins, which just have no support in the government's thorough investigation into this matter.

For example, PERVOSO has claimed that Duggins is the present leader of PERVOSO's specific clique. However, the government has failed to come up with one supporting piece of evidence to support the Defendant's alleged leadership status namely: a) the authorization of criminal activity; b) the calling of meetings; communication with El-Salvador, or c) the management of the affairs of the enterprise. *Dkt. 86 at pages 47-51.* Further, they have no evidence of any person recently victimized of any crime committed by Duggins, and no evidence that Duggins has ever spoken to anybody on the phone about criminal activity. In lieu of such problematic and strongly inculpating information, all they have is mere hearsay evidence which bears no indicia of reliability, as it is coming from a murderer, whom by his own admission was the mastermind who planned and executed the murder (without Duggins' help). *Id. at pages 49-50.*

### b. Mr. Duggins' behavior since his withdrawal appears conforming, and as such rebuts the government's theory that the Defendant is still a member of MS-13.

Furthermore, and to rebut PERVOSO's baseless claim, the Defendant has provided specific evidence of a present lifestyle which would challenge him being the leader of any clique. During the time that Mr. Duggins was the purported leader of MS-13, he worked more hours than that of the average person in society. Also, this supposed leader also chose to pay his income taxes to the federal government[6] – an almost unheard of proposition. Furthermore, the Defendant lived in a stable home environment, and had three young kids that he provided care for on a daily basis. Mr. Duggins also has a fourth child that he would see every weekend, and

---

[6] *See testimony of C. Valladares, Dkt. #86 at page 72.*

as a result said child would be an extended addition of his nuclear family. Moreover, the Defendant has never been seen once with any of his co-conspirators[7] – most likely because he a job and a productive life. Lastly, the Defendant successfully completed his most recent three year probationary period without one violation, and in fact, he got his probationary period terminated early – short of the requisite three years, due to good behavior. All of the above aforementioned factors, and the last one in particular, provides strong assurances to this Court that if Mr. Duggins is released, he can abide by any terms and conditions placed upon him by this Court.

At the very least, the Defendant seeks an independent review of the same, which must take into account these uncontested facts, and with some analysis as to whether the aforementioned counter-balances actually negate the ***mere suspicion*** that the Government has about Mr. Duggins. At a minimum if all the government has is a mere suspicion of Duggins' continued gang involvement, the standard of review for determining Duggins's dangerousness requires much more.

***Clear and convincing evidence standard.***

This Court has found that "with regard to danger, there is a heightened standard of proof because of the "importance of the interests of the defendant which are implicated in the pretrial detention hearing. United States v. DiGiacomo, 746 F. Supp. 1176 (1990) (Wolf, J.) (Clear and convincing evidence is required to establish facts relied upon to support a finding that no combination of conditions will reasonably assure the safety of any other person or the community). *See also* 18 U.S.C. sec. 3142 (f).

Further, the mere mention of "MS-13", in and of itself, is insufficient as a matter of law to carry the day for the government on this heightened burden. See United States v. Patriarca,

---

[7] *Id. at page 40-41.*

948 F. 2d 789 (1st Cir. 1991) (instructing the government that the mere mention of the "mafia" as insufficient to establish a particular person is a danger).

Generally, when reviewing a magistrate's order regarding pre-trial detention, it is the duty of the district court to "undertake an independent review of the case". <u>DiGiacomo</u> at 1181. The Defendant seeks this independent review.

Respectfully Submitted,<br>
DJAVIER DUGGINS<br>
By his Attorney,<br>
<br>
/s/ Gordon W. Spencer<br>
Gordon W. Spencer, Esq.<br>
BBO #630488<br>
945 Concord Street<br>
Framingham, MA 01701<br>
(508) 231-4822

October 28th, 2019

## CERTIFICATE OF SERVICE

       I, Gordon W. Spencer, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on October 29, 2019.

/s/ Gordon W. Spencer