**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

File Number 18-cr-10450-MLW-6

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **DJAVIER DUGGINS** | ) |
|  | ) |

**DEFENDANT, DJAVIER DUGGINS' REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO AMEND PROTECTIVE ORDER -- DOCUMENT #123** *LEAVE GRANTED*
*March 3, 2020*

Now comes the Defendant, Djavier Duggins, ("Duggins") and hereby submits this reply to the government's Opposition as described above. Duggins also relies upon and incorporates by reference his originally filed *Motion to Amend the Current Provision of the Protective Order (Dkt. #114).*

In a nut-shell the Court has now seen the issue presented from two sides. From Duggins' side, he merely seeks the ability to obtain (and retain) only ***non-sensitive*** documents, so that he may have a heightened ability to assist his lawyer in the preparation of his defense. To be clear, by seeking only to retain "non-sensitive" documents, Duggins means to retain only those documents which do not pose any safety-concerns to witnesses, cooperators, or other specific members of the public, and/or the public at large. As is evident, the discovery provided by the government is voluminous, and every document he can retain (without posing any risk of a safety issue) can only help him.

From the government's side, they oppose any such retention, saying that they have made a "particularized showing that Duggins [ ] pose[s] a risk to public safety, and that is all which is needed to establish "good-cause"[1] to demonstrate the blanket restrictions as they are currently imposed.[2]  They further claim that this showing is made via the following allegations:

a) MS-13 is a gang that promotes a climate of fear through violence in order to intimidate and control potential rivals and silence witnesses and cooperators;

b) The gang killed one of their own pursuant to their aforementioned philosophy;

c) Duggins was the leader of a local clique ("Sykos") of this gang;

d) Duggins has been proven violent in the past, citing two convictions – one being 8 years in the past, and the other being 11 years in the past, and with no allegation that Duggins has ever been charged with a violent crime since;

*Government's Opposition to Motion to Amend the Current Provision of the Protective Order ("Opposition") (Dkt. #123) at page 4.*

The Government then goes on to further highlight some other and more specific areas of concern, citing the following:

---

[1] Good cause seems to require a "particularized, specific showing".  United States v. Bulger, 283 F.R.D. 46, 52 (D. Mass. 2012).  In determining whether good cause exists, courts have considered whether the disclosure of the materials would pose a hazard to others, alongside the prejudice of an aggrieved defendant by the order.  See e.g., United States v. Smith, 958 F. Supp. 2d. 506 (S.D.N.Y. 2013).  From review of the Government's opposition, they have not quarreled with Duggins' claim of prejudice, other than to state that other similarly situated Defendants (previous MS-13 prosecutions) were also so restricted, and they weren't complaining. *See Gov't Opposition at page 10.*  Well, and also according to the government, they were all convicted in the end. *Id.*  Maybe in hind-sight, those convicted defendants would have appreciated more access to their own materials in hopes of a better opportunity for an acquittal.  Considering their outcome, it surely wouldn't have made things worse.  In any event, and to be sure, in the government's opposition, they have actually never stated "how" Duggins' retention of any non-sensitive materials would pose a hazard to others – which is their burden to show.  See Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 789 (1st Cir.1988) ("The burden of demonstrating good cause rests on the proponent of the protective order").

[2] While the government claims they have made a particularized showing that Duggins is a public safety risk (which he does not concede), they have not stated in their opposition, why Duggins' retention of **non-sensitive** documents would pose a safety risk to the public (i.e, his phone searches, his own statements, generalized investigative reports, etc.).  It would seem that the latter showing is where the heart of the matter lies – and not in some diatribe about Duggins' being dangerous.  All federal pre-trial detainees in this country have had their liberty restrained due to some finding (on some level) of being dangerous – Duggins included. However, there is no precedent that Duggins is aware of which, and based upon that finding alone, denies him the right to retain non-sensitive discovery documents.

   a) Duggins admitted that he "was" a member of the Sykos clique of MS-13 and further admitted that he had been a member or a decade;[3]

   b) Duggins acknowledged that many of the people in his "generation" were taken out by previous MS-13 prosecutions;

*Opposition at p. 6.*

The government then sums up the argument by stating, "it does not strain the imagination to come up with reasons why Duggins should not be given hard-copy access to all of the evidence that convicted his "whole generation" of MS-13 members". *Opposition at p. 7.* With all due respect to the government, this argument is weak. Actually, Duggins does strain to imagine how his hard-copy access to any document (non-sensitive of course) which was relied upon to convict prior MS-13 members would pose any risk of danger to the public. The public has been amply put on notice of the government's crusade against MS-13, including its impeccable string of convictions, and news coverage of the same. Duggins is unaware how any non-sensitive documents which led to those public convictions are now classified. The government leaves it up to one's imagination to figure this all out, but Duggins has filed this instant "*Reply*", requesting this Court to make the government state its argument. Which documents exactly (that Duggins seeks to have) exposes the public to harm? As of right now, it seems that the government is saying "all of them", but then where is the precedent which would support that claim?

Interestingly enough, when it comes time for the government to cite any precedent which would support their position, they don't. Upon review of the government's opposition, they don't cite to one case in support of their claim that they can restrict ***non-sensitive*** material to a

---

[3] This seems to have already been mentioned in the government's opposition, but perhaps they go over it again, just for re-emphasis. The undersigned would note that the government's opposition mentions at least five different times their belief that Duggins is the leader of the Sykos clique, but yet cannot cite to one confirmed instance of violence engaged in by Duggins in the last 8 years. Upon a total review of the government's opposition, it appears to be more about shock and awe, than it does with addressing substance and data.

3

Defendant, based solely upon a belief that said Defendant is dangerous, but also without a showing that disclosure would cause harm to the public. Rather, they cite to Federal R. Crim. P. 16(d), which allows for discovery material to be restricted when disclosure may "impact the safety of individuals or lead to witness intimidation". The problem for them is that Rule 16 seems to require some sort of nexus between the discovery material sought to be restricted, and the issue of safety. Otherwise, any Defendant who is alleged to be dangerous couldn't receive: a) his own statements; b) a *Miranda* form; c) any drug analysis certificate(s); or d) other forms of automatic discovery. See United States v. Bulger, 283 F.R.D. 46, 54 (2012) ("Indeed, it is difficult to fathom that all of the estimated 300,000 documents produced are sensitive, confidential, grand jury testimony, Title III material, or otherwise suitable and appropriate for continued protection."). No. Rule 16(d) must be interpreted as restricting defendants from having access to documents which can causally be related to civilian safety. Bulger, at 57. ("In order to balance the concerns of witness safety against defense counsel's ability to prepare for trial . . . the government is directed to identify the *Giglio* material by category and bates number."). It's at the cross-roads of this interpretation of Rule 16(d) where we can see all of the confusion beginning, but not on the part of the Defendant.

***The Government's blanket protective order has no causal nexus between all of the discovery material it has provided and safety.***

As it presently stands, the government seeks to allow its protective order (as it is currently drafted) to endure, but without citing to any case which supports their desire. Perhaps their reasoning for failing to cite to a case is that they recognize that what is currently in place is a blanket protective order, and while "useful and expeditious in large scale litigation," . . . they can be overbroad and unnecessary. United States v. Smith, 985 F. Supp. 2d at 545. Most importantly, in ascertaining the appropriate level of protection, "courts should ensure that a

4

protective order is no broader than necessary to serve the intended purposes. Id. In other words, there must be "an adequate showing that all of the documents the government produced or will produce should remain subject to the terms of the protective order. Simply referring to broad swaths of categories of material is not sufficient." Bulger supra, at 58.

***The protective order as it is presently drafted, should remain in effect for all sensitive material, including: all grand jury information, Title III materials, informant files, and highly sensitive Giglio material, as well as any and all documents which would breach the privacy of individuals, or perhaps expose any witness to harm, but, any other document which bears no causative nexus to the government's need for protection, when balanced against the defendant's need to efficiently and effectively access relevant material should not stand.***

As the protective order is presently drafted and enforced, it seeks to deny Duggins retention of any document. Although Duggins (through his counsel) assented to the original terms and conditions of the protective order,[4] he now submits that this blanketed restriction is inappropriately tailored. Duggins relies upon the language given by Magistrate Bowler, in United States v. Cecchetelli, 1:19-cr-10459-RWZ,[5] in support of his argument:

> "The proposed protective order makes no distinction between different categories of discovery material, thus grouping the mundane and routinely-produced material with highly confidential material . . . Grouping discovery material into different categories provides a more appropriate, tailored approach that widens the material available to the defendants and better balances the government's need for protection and defendants' need to efficiently and effectively access relevant material".

*Cecchetelli, at Dkt. entry 508.*

To be sure, all which Duggins seeks is that the distinction contemplated by Magistrate Bowler also be drawn here. As it presently stands, all the government has alleged is the founded conclusion that MS-13 is a violent organization, but alongside the unfounded conclusion that the

---

[4] The parties do not dispute that the original order was set "without prejudice", thereby reserving Duggins' right to challenge it at a later date.

[5] Duggins also states that Magistrate Bowler DENIED the government's motion for a protective order in this instant case – an alleged violent Latin Kings RICO conspiracy, due to the Court's concern that the protective order as proposed by the government was overbroad and not appropriately tailored towards any particular defendant's efficient and effective access to relevant material. *See Dkt entry #508.*

5

Defendant is the leader of one of its cliques.   However, and even accepting the conclusions (founded or otherwise) as true, what they have not established is the harm that witnesses would be exposed to via the production of *non-sensitive* information, and what exactly that non-sensitive information is.  Therefore, and to get the ball rolling, Duggins asks that the protective order be amended to allow him access to the following *non-sensitive* material:

> "All search warrant affidavits/returns, FBI reports of investigation, all statements from the Defendant, and including any plea colloquies from state prosecuted cases, all investigative reports generated from any state investigations relative to his 2012 conviction for armed assault with intent to murder, his criminal record, lab tests and examinations, phone dumps from his personal phone.[6]

Duggins does not need to retain the following:

> "All grand jury information, Title III materials, informant files, and highly sensitive Giglio material, as well as all documents which would breach the privacy of individuals, or expose any witness to harm.

Simply put, Duggins seeks a modification of the current "blanket protective order".  He contends that these types of orders are more likely subject to modification than protective orders based upon a document by document review with a concomitant showing of good cause as to each document.  Public Citizen v. Liggett Group Inc., 848 F. 2d at 790 (although blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification") accord San Jose Mercury News, Inc. v. U.S. Dist. Court-Northern Dist. (San Jose), 187 F. 3d 1096, 1103 (9th Cir. 1999) (blanket protective orders are "inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document").  Furthermore, parties operating under a blanket protective

---

[6] The government contends that phone dumps typically contain pornographic material.  Duggins is not aware of his phone containing any such material (nor has the government specifically alleged as much) and in any event, he would abide by all facility rules about having inappropriate material such as this.

6

order, such as the government, cannot rely on an unreasonable expectation that such an order will never be altered. United States ex rel. Franklin v. Parke-Davis, 210 F.R.D. 257, 261 (D Mass. 2002).

    In sum, Duggins finds that the construction of the current protective order impairs his and his counsel's ability to adequately prepare for trial, which therefore infringes rights of a constitutional dimension.  Duggins is not looking to eviscerate the order as it presently stands.  All he seeks is the ability to retain non-sensitive documents which would allow him to travel great distances, down the path of preparation for his case.  This request is merely striking a balance between the concerns for witness safety, and Duggins' ability to prepare for trial.  Duggins prays for relief.

    Respectfully Submitted,
DJAVIER DUGGINS
By his Attorney,

/s/ Gordon W. Spencer
Gordon W. Spencer, Esq.
BBO #630488
945 Concord Street
Framingham, MA 01701
(508) 231-4822

Dated:   March 15, 2020

## CERTIFICATE OF SERVICE

  I, Gordon W. Spencer, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 15, 2020.

        /s/ Gordon W. Spencer