UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | Case No. 18-cr-10450 |
| **DJAVIER DUGGINS** | |

**DEFENDANT DJAVIER DUGGINS' REPLY TO GOVERNMENT'S OPPOSITION TO DUGGINS' MOTION IN LIMINE TO PRECLUDE HEARSAY TESTIMONY OF ALLEGED CO-CONSPIRATORS MADE TO GOVERNMENT AGENTS, WITH NO AVAILABLE HEARSAY EXCEPTION UNDER F.R.E. 801(d)(2)(E)**

*The government's opposition almost outright ignores the specific argument made by Duggins that the Gutierrez statements were in fact "testimonial" under the recent definition of the same*

After review of the government's opposition, they pretty much avoid addressing Duggins' "specific" argument, that when the government deployed CW- 13, in order to extract incriminating statements from Gutierrez, that tactic amounted to "police interrogation" under *Crawford* and *Davis*, and therefore renders Gutierrez's statements "testimonial", ultimately barring it under the Sixth Amendment.[1]  Rather, the government merely bypasses the argument, believing they can just provide this Court with some blanket response that under *Crawford*, "statements made in furtherance of the conspiracy" are "by their nature" non-testimonial, and therefore not in violation of the constitution. *See gov't opposition at p. 10.*  Duggins has no

---

[1] *See also Ohio v. Clark*, 135 S. Ct. 2173, 2181 (2015 (when considering all the relevant circumstances, statements to individuals other than law enforcement officers can raise confrontation concerns);

qualm about the rule.[2]  But, and in the 12 pages of discussion by Duggins on the ***entire*** issue, he specifically argues that under a very limited context, a statement subject to the rule can ***also*** be testimonial.[3]  This very limited context is when the co-conspirator statement is specifically extracted (or "procured") for the "primary purpose" of establishing or proving past events potentially relevant to later criminal prosecution.  *Davis* at 822.[4]  Here, we have such an occurrence – with CW-13 (on his own) hearing a story-line (about past-events) given by Gutierrez, and then sent back to Gutierrez by the government to get Gutierrez's story on record – their primary purpose.  Duggins contends that if the primary purpose wasn't to build a prosecution for trial against Duggins, there would have been no reason to send CW-13 back to speak with Gutierrez a second time.[5]

---

[2] See page 18 of Duggins' Motion *in Limine*, where Duggins states himself ". . it is true, that statements made in furtherance of the conspiracy are considered to be non-testimonial".

[3] See page 19 of Duggins' Motion *in Limine*, where Duggins not only poses the question – "whether both can exist in the same world: 1) statements being testimonial; and at the same time 2) also be made in furtherance of the conspiracy?" But also answers it, and in the affirmative, citing to *Melendez-Diaz* for support.  *Melendez-Diaz v. United States*, 129 S. Ct. 2527, 2539-40 (2009). Duggins' question and answer (with his argument in support of the same) is flat-out ignored by the government, with them opting to merely state a rule which Duggins has already conceded – that generally speaking, statements made in furtherance of a conspiracy are admissible hearsay.   Duggins was hoping for the government to also participate in an intellectual discussion about what Duggins submits is a thought-provoking consideration – whether (and in a specific context) this rule can have an exception.  The government appears not to want to join in on the discussion, and Duggins submits they have forfeited their opportunity.  As a result, Duggins must seek a ruling from this Court without their input, where it must muscle through the analysis on its own.

[4] *See also Ohio v. Clark*, 135 S. Ct. 2180 *quoting Michigan v. Bryant*, 562 U.S. 344, 358, 131 S. Ct. 1143 (2011) ("In the end, the question is whether, in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony.") (internal quotations omitted).

[5] Duggins would therefore concede that if the government wants to call CW-13 as a live witness, to testify about his first and non-governmental induced conversation with Gutierrez, Gutierrez's original statement would not amount to a testimonial one.  He still challenges whether the first conversation contains any statements in furtherance of the conspiracy, but will concede that it would not be barred by the Sixth Amendment.

The government did suggest that the usage of informants (in a general sense) is not akin to extraction of the testimonial brand. *See United States v. Ciresi*, 697 F.3d 19, 31 (1st Cir. 2012) (statements made unwittingly to a government informant are "clearly non-testimonial." (citing *Bourjaily v. United States,* 483 U.S. 171, 181-84, 107 S. Ct. 2775, 97 L.Ed.2d 144 (1987).[6] While this may be true, the government fails to disclose that the 1987 case of *Bourjaily* did not involve the "unique" set of facts which were involved here – a government informant sent to extract a *previously* ascertained confession, and solely for the purpose of getting it on tape. *See Bourjaily generally* (the facts in *Bourjaily* involved a government agent not sent to record past events, but rather sent to facilitate a drug deal ***not yet consummated***; in any event, the Court's only role in *Bourjaily* was to revisit the extent of the "bootstrap" rule, when deciding foundational requirements for the admission of co-conspirator hearsay).

Furthermore, the government cites to the *Ciresi* case, but that case as well did not involve the recording of past events for trial, let alone the methodology of using an informant only for that purpose. *Id*. at 19. (Government sent an informant (Paul Caranci) to join an extortion scheme to obtain evidence regarding current and future events). Here, all Duggins wanted was for the government to explain why (in his case) they can send an operative to record a co-conspirator regarding past events, the definition of testimonial, but still believes that it can cling to an arcane but unclear competing interest, that if the statements are in furtherance of a conspiracy, it is considered non-testimonial. The reason why this competing interest is unclear is because the government provides no precedent stating that any statement made in furtherance of a conspiracy is considered non-testimonial ***in all circumstances.*** However, Duggins has brought precedent to the table showing the "in furtherance" rule is not as absolute as the

---

[6] *Gov't opposition* at page 13.

3

government may think.[7]   The government has given no counter to this argument.  As a consequence, Duggins submits the government has waived their right to challenge the issue.  See the argument in support demonstrated below:

> "It is not enough merely to mention a possible argument in
> the most skeletal way, leaving the court to do counsel's work
> create the ossature for the argument, and put flesh on its' bones.
> As we have recently said in a closely analogous context: Judges
> are not expected to be mindreaders.  Consequently a litigant has
> an obligation 'to spell out its' arguments squarely and distinctly,
> or forever hold its' peace."

*United States v. Zanino*, 895 F. 2d 1, 17 (1st Cir. 1990) (internal citations and quotations omitted).  Duggins therefore stands upon his original argument, that the Gutierrez statements (and in the context in which were extracted) were in fact testimonial, and therefore barred under Constitutional provisions, notwithstanding its' admissibility under any specific Federal Rule of Evidence.

***The government's opposition states their burden (under F.R.E. 801(d)(2)(E)) accurately, which requires them to establish that Gutierrez's specific intent was to "further" the goals of the MS-13 enterprise conspiracy; but then, in trying to satisfy this burden, the government doesn't rely upon the stated goals of MS-13, all of which involve violence, but rather comes up with their own theoretical ones involving updating and reporting – goals which actually don't further what MS-13 is about;  In addition, the government also fails to provide any evidence that Salvador Gutierrez's statements about Duggins bears any relationship to furthering the actual goals of MS-13.***

       To be sure, the government is correct that they must establish by a preponderance of the evidence that the Gutierrez statements must tend to promote one or more of the <u>objects</u> of the conspiracy.  *See government opposition at page 17, citing United States v. Piper*, 298 F. 3d. 47 (2002).   Furthermore, and although they don't admit it, they must concede that when Gutierrez made the statements, he must have had the specific intent of furthering the goals of the

---

[7] *See Melendez-Diaz* at 2539-40. (Court found that where business records, while "by their nature were not testimonial" and therefore admissible under the business records exception, were in fact testimonial, since the business record was prepared specifically for use at trial.).

conspiracy.[8] Once the government acknowledges its' burden, it then proceeds to give a laundry list of the "goals of the conspiracy" which Gutierrez must have intended to further. This list is as follows:

1) To maintain trust between him and CW-13; *United States v. Siegelman*, 640 F.3d 1159, 1181 (11th Cir. 2011);

2) To explain to CW-13 what happens to those who cooperate with law enforcement; *United States v. Perez Cubertier*, 958 F.3d 81, 89 (1st Cir. 2020);

3) To demonstrate to CW-13 that MS-13 was continuing to effectively address external threats on the outside; *United States v. Newton*, 326 F. 3d 253, 259-60 (1st Cir. 2003);

4) Reporting of "significant" events; *United States v. Sepulveda*, 15 F.3d 1161 (1st Cir. 1993);

5) Identifying a fellow co-conspirator; *United States v. Crocker*, 788 F.2d 802, 805 (1st Cir. 1986);

6) Identifying a present co-conspirator; *United States v. Handy*, 668 F.2d 407, 408 (8th Cir. 1982);

7) Sharing of "pertinent" information about a conspiracy's mode of operation; *United States v. Munson*, 819 F.2d, 337 (1st Cir. 1987);

8) To bolster his standing in the clique; *United States v. Ponzo*, 853 F.3d 558, 580 (1st Cir. 2017); and

9) They were in furtherance since they were not induced by CW-13; *United States v. Guerro*, 693 F.2d 10, 13 (1st Cir. 1982).

***The first problem*** – **None of these theoretical goals are actually goals of MS-13, and furthermore, all of these theoretical goals actually thwart one of the specific conspiratorial goals of MS-13 – which is secrecy.**

The first problem with the government's list is that none of their theoretical "goals" are actually goals of the alleged enterprise. To be sure, the government has officially alleged (within

---

[8] *See United States v. Tse*, 135 F. 3d 200, 209 (1st Cir. 1998) (recognizing other circuits addressing this issue have held that the inquiry should focus on the declarant's intent, making the intent of the one who receives the information immaterial, *see U.S. v. Gutierrez,* 48 F.3d 1134, 1137 (10th Cir.1995); *U.S. v. Williams,* 989 F.2d 1061, 1068 (9th Cir.1993).

5

the indictment) the undeniable goals of MS-13.  They are as follows:

(a)     Promoting and enhancing the prestige, reputation and position of the enterprise ***with respect to rival criminal organizations***; (emphasis added).

(b)     Preserving and protecting the power, territory, and criminal ventures of the enterprise through the use of intimidation, threats of violence, and acts of violence, including murder, attempted murder, and assault;

(c)     Keeping victims, potential victims, and community members in fear of the enterprise and its members and associates; and

(d)     Ensuring discipline within the enterprise and compliance with the enterprise's rules by members and associations through threats of violence and acts of violence.

As stated within the Defendant's original Motion *in limine*, there can be no question that the gravamen of these stated goals is just pure violence.  *See Duggins' Motion in limine at page 3.*  Therefore, and when analyzing co-conspirator statements for admissibility, as a foundational matter they must further the enterprise's objective of violence.  However, and when it comes time for the government to meet their burden, they don't focus upon the violent goals of MS-13, but rather, conjure up a list of fictitious goals (never previously alleged and) which mainly involve different variations of updating MS-13 operatives on clique business.  However, and here is where the government truly falls down, but merely updating MS-13 operatives on clique business has already been shown to "thwart" a true conspiratorial goal of MS-13 – which is keeping the dissemination of information regarding its program of violence in-house.  *See testimony of Special Agent Jeffrey Wood, referenced in Duggins' Motion in limine.*  A quick review of the government's fictitious goals, alongside MS-13's true nature, fleshes this point out.

   **a. The government's "cherry-picked" goals of explaining, and/or sharing, and/or reporting information with CW-13, in order to update him, while perhaps may further a conspiratorial goal of some other criminal enterprise, it doesn't with this one, and government has completely ignored this point.**

When one reviews the conspiratorial goals which the government believes that Gutierrez

6

was furthering, almost all of them seem to be a different variation of the same fact.  The fact is one of reporting.  Six of the nine goals, involve either: 1) explaining; 2) demonstrating; 3) reporting; 4) identifying past information; 5) identifying present information; and/or 6) sharing.  However, and the government has yet to come to terms with this problem, but this type of "goal" is contraindicated in MS-13, as pointed out by SA Jeffrey Wood.[9]

Under this analysis, Duggins does not care what information Gutierrez told CW-13.  So long as it was clique business, which there can be no dispute that it was, the reporting of the same could not further the conspiratorial goals of MS-13.[10]  As a result, this Court can virtually exclude all of the government's laundry list of theoretical goals, no matter what the substance of the communication, as they all involve the dissemination of information to a non-clique member in violation of conspiratorial rules – making the outcome painful for the government but quick.  Furthermore, and the reason why this outcome would be so quick is because the government doesn't even bother to address the conspiratorial rule cited by Jeffrey Wood, rather submitting argument as if the rule doesn't exist.   Actually, this is not the first time where a conspiratorial practice of secrecy is adopted by a conspiracy and thereafter has been found to been thwarted.  *See United States v. Ford*, 839 F.3d 94, 107 (1st Cir. 2016) (where an object of the conspiracy

---

[9] Duggins looked high and low within the government's discovery, and uncovered specific evidence from their own expert on MS-13 – S.A. Jeffrey Wood, who stated unequivocally that MS-13 operatives are not to speak about clique business with non-clique members.   The reasonable inference for such a rule is to further their conspiratorial goal of effectuating violence without detection, via internal secrecy, for what could be another plausible reason for keeping quiet about clique business?  Duggins of course would lose the argument, if Gutierrez "updated a clique member" about what the Sykos clique was up to – perhaps with the clique member being out of the loop (for some reason) and needed to be brought up to speed.  Duggins still maintains that even in that scenario, the specific statements made (about who jumped in whom, etc.) wouldn't further the conspiratorial violent goals of MS-13.

[10] Furthermore, CW-13 was in jail at the time he was told this, and the record provides no help in opining that (more likely than not) Salvador Gutierrez had any specific intent in furthering violence on behalf of MS-13 by having afternoon story-time with CW-13 while they are both in jail. *See United States v. Foster*, 711 F.2d 871, 880 (9th Cir. 1983) (mere narrative declarations, made without intent to induce assistance to the conspiracy, do not satisfy the "strict requirements" of Rule 801).  There is no evidence that Gutierrez expected CW-13 to do anything with the information which could somehow induce assistance to the conspiracy, or further the conspiratorial goals listed in the indictment.

7

was secrecy, a statement made by a co-conspirator does not further that which serves as the "polar opposite" of concealing the conspiracy). First, we need to ask the government if there is a conspiratorial "goal" of MS-13 of secrecy. If the government agrees, the next and only question which need be answered is how was Gutierrez furthering the MS-13 conspiratorial enterprise by telling an outside clique member clique business in violation of conspiratorial rules of secrecy. The government has not answered this question as of present, and should be precluded from coming in at the 11th hour (during oral argument), and thus they have failed to meet their burden on establishing that Gutierrez has furthered the goals of the conspiracy.[11]

***The second problem*** **– None of the statements about Duggins actually further the conspiratorial goals named in the indictment.**

Even if (somehow), this Court would accept that the government's theoretical goals were inline with the goals of MS-13, Duggins still maintains that the statements made by Gutierrez about Duggins did not further those goals. In Duggins' motion *in limine*, he once again went to great pains to identify the statements made by Gutierrez (as it pertained to him) which he believes were not made in furtherance of the conspiracy. Again, the government does not

---

[11] This would also include the government's theoretical goals that Gutierrez provided the information to maintain trust and cohesiveness with CW-13, or that he did it to bolster his standing within his clique. Again, any information given by Gutierrez to a non-clique member could not be in furtherance of the conspiratorial goals of MS-13. Furthermore, it defies logic that Gutierrez is telling CW-13 anything to "maintain" trust. What trust would he be maintaining? The fact pattern which the government relies upon is somewhat backwards. By Gutierrez telling CW-13 what was in his heart, Gutierrez obviously already came to trust CW-13, otherwise he wouldn't have told him anything . On the other hand, if CW-13 wanted to create or prove his trustworthiness to Gutierrez, then he would be the one seeking to curry favor with Gutierrez, by revealing all of *his* secrets, all with the design of proving his worth to the doubter – Gutierrez. The trust argument appears ill-conceived by the government. Furthermore, and with respect to Gutierrez seeking to bolster his standing within Sykos, again, it would appear that the goals of MS-13 don't endorse such a goal, since the criminal enterprise seems to be uninterested in having clique members bolstering their status to other non-clique members. When appreciating that MS-13's only goal is violence, it seems that the only way Gutierrez would be furthering a conspiratorial goal with MS-13 is by bolstering his image NOT by his words but by his actions. Salvador Gutierrez's reporting about his violent acts seems to be contraindicated with the rules and regulations of MS-13. In other words, MS-13 does not appear to have a goal of allowing the individual to boast and brag to outside clique members, and the government has not pointed out where to find such a goal in the MS-13 playbook. There is also one final goal given by the government – where Gutierrez was not induced by CW-13 to give the statement. Duggins finds it hard to fathom what goal Gutierrez was furthering in that context, even if true.

address these statements head-on.  However, and to summarize this in a few sentences, Duggins contends that any statements by Gutierrez telling CW-13 about either:  a) Duggins being the first word; b) Duggins checking for cameras after a murder; c) Duggins recruiting Perverso; d) Duggins learning a password;[12] or e) Duggins gossiping about how Lopez has a big mouth and so don't kill with him, does nothing to further the conspiratorial goals of:

(a)    Promotion of fear *with respect to rival criminal organizations*;

(b)    Protecting the power, territory, and criminal ventures of the enterprise;

(c)    Keeping victims, potential victims, and community members in fear; and

(d)    Ensuring discipline within the enterprise and compliance with the enterprise's rules by members and associations through threats of violence and acts of violence.

To state this another way, the government has failed to explain how "gossip" or "who is jumping in whom" or "who is leading whom", has anything to do with furthering the violent objectives of MS-13.

Actually, and to be fair to the government's argument, Gutierrez relaying to CW-13 all of the gruesome details of the Rivas murder, could (arguably) further the conspiratorial goal of (d) ensuring "discipline within the enterprise through threats of violence and acts of violence. The problem with that argument is that the statements regarding Duggins (as outlined above) do not advance that conspiratorial goal.  It is not alleged that Duggins ever made one statement, or did one thing which furthers any conspiratorial objective of ensuring discipline amongst MS-13 members.  Again, the government provides this Court with no help on opining otherwise.

*The third problem* – **Why again was this not mere idle chatter?**

As stated in his original papers, Duggins contends that Gutierrez's statements were mere

---

[12] Again, the government has not provided input regarding the factual dispute on the English translation of this statement.

9

idle chatter which narrated past events.  The government's response?  A hodgepodge of responses, first accepting (as it must) that Gutierrez's statements were in fact a narration of past events, but then provides no explanation for why the narration was not merely idle chatter.  Duggins would like to remind the government (and hopefully for one last time), the in furtherance requirement is not ceremonial, and it is certainly not all-inclusive.  *See United States v. Ford*, 839 F.3d 94 107 (1st Cir. 2016) ("[a] judicial determination that a coconspirator's statement tended to further the conspiracy must be supported by some plausible basis in the record. . . as such "the 'in furtherance' requirement represents a real limitation on the admissibility of coconspirator statements," and the proponent "is not entitled to a free pass") (citations and quotations omitted).   The mere fact that the "in furtherance" requirement is an element of proof, and considering also that idle chatter among conspirators fails to satisfy that element, then surely one must conclude that either: a) co-conspirator statements are made with the *intent* to further something; or b) made with the *intent* to yak.   The government gives this Court NO help when deciding between the two options.  However, Duggins can.  *See United States v. Urbanik*, 801 F.2d 692, 698 (4th Cir. 1986) (despite it being evident that the conversation was between two co-conspirators, it was made during the course of the conspiracy, and they discussed a third drug supplier and conspiracy member, the court found that this was a case where the conversation "touches upon" the conspiracy, but in no way furthered the conspiracy; it was two men chatting during the course of lifting weights).

In the present case, it appears that Gutierrez and CW-13 were chatting (mostly Gutierrez) about all sorts of topics  – some of which touch upon the conspiracy (like who jumped in who) and some of which don't (like for example, how bad jail is ).   But again, Duggins contends that Gutierrez's statements, and particularly the ones where his name is mentioned, cannot be

10

reasonably construed to convey to CW-13 the message to engage in some type of future conduct beneficial to the conspiracy.

Duggins contends that if the government would have their way, then anytime a co-conspirator speaks about past crimes with another co-conspirator, they are made in furtherance. However, Duggins is not aware of any case which holds such an all-inclusive scope of F.R.E. 801(d)(2)(E). If that were the case, no motion could ever be filed to exclude statements made by a co-conspirator, unless they were talking about red-sox game which happened the night before – a fact which would render the in furtherance requirement down to a mere separation between a discussion of criminal activity, and non-criminal activity – a non-existent prerequisite. Duggins contends that there has to more of a substantive analysis beyond such a simplistic perspective. *See United States v. Eubanks*, 591 F.2d 513, 520 (9th Cir. 1979) (statements between husband and wife regarding routine activities of drug conspiracy, even though speaking of criminal activity, did nothing to advance the aims of the alleged conspiracy).

Duggins contends here is where the Court does its' work. The Court is urged to take a substantive analysis of the statements, determining whether they merely touched upon the conspiracy, or actually were intended to further it. Again, this is really about Salvador Gutierrez. This Court has to decide whether Gutierrez had the specific intent of furthering the conspiratorial objectives, not whether Gutierrez wanted to gossip or chatter about them, but actually wanted to *further* them, and this Court can only obtain the evidence to make this conclusion from one source – the government. This is to say, that it's the government who has to provide the evidence which proves one conclusion over the other. The government has failed in establishing its burden.

11

*The wrap up*

Considering that this analysis really boils down to 1 consideration – what was Gutierrez's intent – Duggins will cut to the chase and ask the Court to merely ask the government where in their pleadings did they establish what was Gutierrez's intent, since it is their burden.  However, and by review of their opposition, they don't have the slightest idea of what was in Gutierrez's mind, when he spoke with CW-13 not once, but twice about the same facts.  That's why the government gave this Court 10 options to choose from – a kitchen sink styled presentation.  However, and this strategy aside, Duggins submits that there was only one plausible reason why Gutierrez told CW-13 the same story in repeated fashion – self-promotion.  Gutierrez is like an athlete on the playing field, but benched (in jail) due to injury.  He still is a member of the team, and when active a good one, but he can't let go of, and wants to relive that last-shot (of his most recent game) over and over, and to anybody who is willing to listen.  This would include other players from other teams in the league.[13]   He brags, and he boasts, and throws names around, and also becomes gossipy about these other players as much as he is obnoxious about himself.  The only goal which Gutierrez is furthering is his own, and that is one of self-promotion, but again nowhere has MS-13 endorsed such an objective, and again disfavors the same, and particularly with non-clique members.  The government again stands silent on this argument.

***Regarding the government's argument that Gutierrez's statements have relevance independent of their truth, Duggins does not understand how the jurors could hear Gutierrez's statements, and ignore their truth when deciding the ultimate issue of whether Duggins and Gutierrez engaged in a RICO conspiracy to commit racketeering acts; in other words, any probative value which these statements possess independent of their truth would be outweighed by its' prejudicial effect.***

Although the government has led with this argument, Duggins did not raise it in his Motion *in limine*, and does not want this Court distracted by it, when deciding whether

---

[13] Of course the NBA wouldn't prohibit this type of bragging, but the National Basketball Association is not a criminal enterprise, indifferent about the dissemination of information, but while MS-13 has a different approach.

Gutierrez's statement was testimonial, or it was in furtherance of the MS-13 alleged conspiracy. However, and if the Court rules that Gutierrez's statements are barred, and this Court wants to consider the admission of the statements for any non-hearsay purpose, Duggins reserves the right to address this claim in more detail (if the Court would allow it).   But to keep it short and sweet, but still substantive, it would appear the government believes Gutierrez's statements have independent relevance to show the association between the co-conspirators.  In response, the Defendant believes that the government has a wealth of cooperating witnesses who would testify about the alleged association between himself and members of the Sykos clique, including Court records demonstrating an alleged crime with another clique member, along with a statement by Duggins himself, demonstrating his past involvement with the Sykos clique.  Perhaps if Duggins were to admit evidence at trial that he doesn't know Salvador Gutierrez, the government could introduce statements by Gutierrez (not for the truth) but for some sort of impeachment value, discrediting the challenged association.  But to allow the Government to admit these statements (in its case in chief) not for their truth, but merely to show that Gutierrez and Duggins associated with each other, Duggins would argue (and its' the government which should prove otherwise) that the probative value these statements have in proving association, are outweighed by the prejudicial effect those statements would have.

      For example, the one "alleged" statement, that Duggins told Gutierrez "not to kill with MAYIMBU (Erick Lopez)", says it all.   If the government would have its way, it would seek an instruction to the jurors that they are to ignore the truth of the statement – whether Duggins actually advised Gutierrez about killing strategies, but only consider it for the purpose of whether Duggins associated with Gutierrez?   On balance, Duggins would submit that the jurors should never hear such a statement at all.

13

Where a given statement potentially qualifies as both hearsay and non-hearsay, the district court may admit it if it is relevant, and if the probative value of its intended non-hearsay use is not substantially outweighed by the risk of the jury considering it for the truth of the matter asserted. *See* Fed. R. Evid. 403; *see also United States v. Mazza,* 792 F.2d 1210, 1215 (1st Cir. 1986). Duggins simply argues that whatever probative "non-hearsay" value this statement would provide (and it would be minimal) would certainly be substantially outweighed by the jury believing that Duggins is guilty of a RICO conspiracy, not because he associated with Gutierrez, but he did so with the intent to assist Guttierez engage in racketeering acts. The argument given in the *Mazza* case expresses this argument poignantly:

> "Nevertheless, as we shall explain below, the risk that the jury would consider those words for their truth was great, and the government's need to present them to the jury — through the agents' testimony — was virtually nonexistent. Because the "probative value" of the agents' testimony was "substantially outweighed by the danger of unfair prejudice," it should have been excluded under Rule 403 of the Federal Rules of Evidence. The jury was particularly likely to consider these out-of-court declarations for their truth, for they directly implicated the defendants in the specific criminal acts at issue. *See United States v. Mancillas*, 508 F.2d 1301, 1310 (1978) ("testimonial repetition of a declarant's out-of-court charge that the defendant ... was engaged in specific criminality" creates "too great a risk" that jury will consider out-of-court statement for its truth)."

In light of the specific substance of these statements, and the specific crime for which Mr. Duggins is indicted, a RICO conspiracy, the government just can't be serious about admitting these statements only for some non-hearsay purpose.

In sum, the Defendant asks the Court to allow his motion *in limine*.

Respectfully Submitted,
DJAVIER DUGGINS
By his Attorney,

/s/ Gordon W. Spencer
Gordon W. Spencer, Esq.
BBO #630488
945 Concord Street
Framingham, MA 01701
(508) 231-4822

Dated:   October 15, 2020

## CERTIFICATE OF SERVICE

I, Gordon W. Spencer, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 15, 2020.

/s/ Gordon W. Spencer