## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

**v.**                                    Case No. 18-cr-10450

DJAVIER DUGGINS

## DEFENDANT, DJAVIER DUGGINS'  RESPONSE TO COURT ORDER #566

NOW COMES THE Defendant, Djavier Duggins ("Duggins") and hereby responds to the Court's order #566 – of whether Mr. Salvador Gutierrez's ("Gutierrez's") out of court hearsay statements would be admissible, if not under one hearsay exception – Fed. R. Evid. 801(d)(2)(E) (the in-furtherance exception), but alternatively under another – Fed. R. Evid. 804(b)(3) (declaration against penal interest).

## INTRODUCTION – THE STATUS CONFERENCE

As a necessary matter, and before delving into such an inquiry, it becomes prudent to ask whether Gutierrez's statements are testimonial, which would therefore serve as a constitutional bar to their admission, and thereby obviating the need to determine if they are admissible hearsay, under any exception, as the confrontation clause would necessarily control.

This is because, and during a status conference involving the parties and the Court which took place on January 26, 2021, the aforementioned issue came right to the forefront, as the Court suggested that Mr. Gutierrez's statements, which undoubtedly were unwittingly made to a government informant, would be *per-se* non-testimonial, and therefore outside the protections of the confrontation clause.  Duggins is not willing to concede this point and would like to take an

opportunity to change the Court's mind.  For if the Court deems the statements made by Gutierrez as testimonial, such a ruling would bar its' admission under any hearsay exception (declaration against penal interest or otherwise), and thereby rendering any attempt to use the Federal Rules of Evidence to circumvent the constitution as futile or moot.  *See Crawford v. Washington*, 531 U.S. 36, 53 (2004) (after engaging in a historical and textual analysis of the confrontation clause under the Sixth Amendment, the *Crawford* court concluding that "testimonial hearsay" is its' primary object of concern). *See also id.,* at 61 ("[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of `reliability.'").

**A. As a general and introductory matter, Duggins has already answered the question of whether Gutierrez's statement are testimonial, as outlined in his original filings – *dkt 334*.**

Initially, and in Duggins' attempt to demonstrate to this Court that Gutierrez's statements were NOT admissible under the "in-furtherance" exception to the hearsay rule, he first argued to the Court that the Confrontation Clause served as a complete bar to their admission.  *See dkt. 334* at section I.  As such, Mr. Duggins hereby incorporates by reference the arguments tendered in said pleading, and asks the Court to consider those arguments (along with the present ones to follow) before it ultimately rules.  But to highlight for the Court which Duggins has already argued in *dkt 334*, he provided arguments to the Court that:

1) Under *Crawford* and its progeny, interrogations by police are testimonial;

2) The question and answer which took place between a police agent ("CW-13") and Gutierrez was an interrogation as defined by *Rhode Island v. Innis,* 446 U.S. 291, 302 (1980); and

3) It is further without question that the question and answer between CW-13 and Gutierrez were designed to procure a record for use at trial.

*Id.*

Although the 3 arguments had an appearance of straight-forwardness, the 3 arguments were not specifically met with any developed opposition from the government. *See dkt #364 – Government's opposition to dkt #334.* To be fair to them, the government did provide some blanket response that under *Crawford*, "statements made in furtherance of the conspiracy" are "by their nature" non-testimonial, and therefore admissible without a confrontation violation. *See gov't opposition* (#364) *at page 10.* However, and the government appeared to make this argument, in some attempt to bypass what Duggins brought to the court's attention in his original filings. *See dkt # 370* (Duggins' Reply to their opposition) at pages 1-2.[1] However, and that said, and whether the government takes a present position on this issue or not, Duggins knows that this Court has its own opinion about Duggins' arguments – which actually appears to be somewhat in sync with the government's opposition, that "unwitting statements" made by declarants to government informants are outside of the realm of testimonial statements.[2]

However, and Duggins maintains (and hopes that the Court's ultimate ruling considers what is to follow but) that no legally sound case can be cited (since our Supreme Court has processed particular fact patterns over time about the testimonial question) which would suggest that a declarant's statements to an undercover informant under the unique fact pattern here – a statement extracted from the declarant regarding past events, but with a ***primary purpose*** of

---

[1] Duggins surmises that the government will surely address its' previous shortcomings in its response to Court Order #566, as the order has given them the opportunity at a second bite of the apple to address it.

[2] The court may also believe (as Duggins is not sure) that what took place between CW-13 and Gutierrez was NOT the equivalent of a police interrogation in the technical sense, but rather, a declarant unwittingly rendering statements (either in furtherance, or against his penal interest) to an undercover operative for the government. Duggins would counter that the court in *Crawford* also explicitly declined to define the scope of the phrase "police interrogation". *Crawford,* at 76 n. 4. The *Crawford* Court explained that the term should be used in its "colloquial" not "technical" sense. *Id.* As such, Duggins is taking its cues from that philosophy when assessing whether what took place here is consistent with how police interrogations are or can be viewed. *Cf. Melendez-Diaz v. Massachusetts,* 129 S. Ct. 2527, 2529 (2009) (lack of interrogation is "irrelevant" for 6th Amendment purposes, a witness is no less a witness who volunteers information over being interrogated).

gathering evidence for a future prosecution – would NOT be testimonial simply because the

declarant was not aware of the ***primary purpose*** (his statement procured for trial), and was so

unaware because the informant was under specific instructions by the government to trick him.[3]

---

[3] Pursuant to the Court's subsequent order #576 – this Court has suggested a case, *United States v. Volpendesto,* 746 F. 3d 273 (7th Cir. 2014) for Duggins to review, which after the same could be perceived as uprooting his aforementioned assertion.   A review of that case demonstrated a very similar modus operandi to the investigatory practices here – the use of a government agent (CW-13) to lure a declarant (Gutierrez) into confessing his past crimes, and unwittingly so, where the confession  has also implicated Duggins.  *See Volpendesto* at 287 (the government agent, "Hay" lured the declarant (Volpendesto) to confess his crimes which implicated a man named Polchan).  The *Volpendesto* court followed 7th Circuit precedent, which seems to adopt a *per-se* rule which renders statements made unwittingly to a government informant as being non-testimonial.  *Id.* at 289 (citation omitted).  Duggins will show *infra*, that while such a rule exists, it is surely not a "*per-se*" one, as the statement cannot be given "non-testimonial" status before testing its "testimonial" status via the *primary purpose* test.  To its' credit, the *Volpendesto* court did apply this test, as outlined in *Michigan v. Bryant,* 131 S. Ct. 1143 (2011) to determine if the declarant's statements were testimonial.  *Id.*  In *Bryant,* the Supreme Court instructed that in applying the primary purpose test, the "relevant inquiry is *not* the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the 'circumstances' in which the encounter occurred." *Id.* at 1156.   However this holding must be considered in its' proper context, as it was applied to the facts in *Bryant* – a remarkably different set of facts than in *Volpendesto*.   In *Bryant*, the Court was attempting to ascertain the primary purpose of an investigation surrounding an "on-going" emergency, where such an investigation necessarily requires an inquiry into the present circumstances of the situation, over past ones. *Id.* at 1154. The *Bryant* court thereafter opined that answers coming from a past inquiry would be testimonial, whereby answers coming from a present inquiry would be non-testimonial. *Id* at 1154-1155. Armed with that approach, the *Bryant* court found that, and objectively speaking, both the listener and speaker would have understood the primary purpose of the investigation, which was to resolve the present emergency, rather than simply gather past information about what had happened before.  *Id* at 1160-61. The *Valpendesto* court thereafter took the *Bryant* analysis and applied it in its own case, and somehow concluded that, and objectively speaking, a statement made unwittingly by a declarant to an undercover informant, has the optics of a casual confidential conversation between co-conspirators, and therefore the statements which came from that conversation were non-testimonial.  *Id.* at  289.  The *Valpendesto* opinion, however, failed to appreciate that when ascertaining the primary purpose of any encounter, it is a "highly context-dependent inquiry". *Davis* at 827-28*; See also Bryant* at 1159 ("The Michigan Supreme Court's failure to focus on the context-dependent nature of the *Davis* decision also led it to conclude that the medical condition of a declarant is irrelevant"). The opinion failed to also appreciate that under its' own highly contextual facts, and objectively speaking, it involved an investigatory inquiry by a government agent which involved tricking a declarant into giving out-of-court statements.  Further, the examination conducted by the informant did not address a current investigatory need, but rather a past investigatory need, inquiring about past events.  *Volpendesto.* at 287 (declarant's statement involved a 2005 recording about a bombing that happened two years prior).  The approach in *Volpendesto* simply did not comport with the spirit of the primary purpose test.

For example, let's say that in *Volpendesto*, the informant (Hay) approached the declarant wearing a police badge, and interrogated him about past events. The declarant would obviously have known about the primary purpose of the encounter, and undoubtedly any statements he made would have been testimonial. However, and the court in *Volpendesto* engaged in NO analysis, for how that primary purpose would no longer have any relevance, simply by Hay engaging in deceit to obtain the same information.  Hay's purpose does not change one iota, and therefore the *Volpendesto* analysis of determining the primary purpose of the interrogation was one-sided.  Looking at this another way, if the victim in *Bryant*, for example, told the police officer, "I will answer your questions only to address my current health crisis, but will NOT answer your investigatory questions about the past event of who shot me", and thereafter the officer tricked the victim into disclosing who shot him. Could there be any way to view the officer/civilian encounter other than as a testimonial encounter?  If no, Duggins sees no difference when using a

To be sure, and no matter what case is found in our sister circuits (*Volpendesto* perhaps) Duggins submits this is a matter of first impression in this circuit.[4]  As such, Duggins asks this Court to rely upon the only precedent upon which this Court must follow, and that is of our Supreme Court.  Although Duggins knows that this Court is not in need of one, he believes a refresher on the topic of what our Supreme Court opines is "testimonial evidence" would be helpful, if for no other reason but to provide a proper foundation for his arguments to come. Duggins appreciates the arduous nature of the task in shifting the Court's thinking about Salvador Gutierrez's statements.   This is because this Court has already provided the parties with a wealth of caselaw, including cases within and outside this Circuit, which have all stood for its' suggested proposition – that statements made by declarants in surreptitious circumstances, are considered to be non-testimonial in nature.[5]

---

government agent to trick a declarant into giving testimonial statements, and in response to a government inspired interrogation in investigating a past crime. The *Volpendesto* court does not even come close to thinking about the *Bryant* analysis in this way, and it should have because each case is a "highly context-depended inquiry", which doesn't have the luxury to be subjectively selective on which facts it wants to consider.  Duggins argues that in any case where the primary purpose for extracting a statement from a declarant would be to create a record for trial on a past event, the answers would be testimonial.  The fact that the declarant is tricked into giving those answers, or ignorantly gave those answers, shouldn't alter what the 6th Amendment is trying to police against – lack of cross examination of this specific type of information  An example of the ignorance of a declarant as to police motives can be seen in *Hammon v. Indiana*, 547 U.S. 813, 820-21, 829-30 (2006)  (the declarant in *Hammon*, was never told that her answers would later be used to prosecute the male party, and there was no indication she thought they would be, but yet her statements were still deemed testimonial because there was no other purpose (such as an emergency) by law enforcement to request the information.  Duggins tried to address Court Order # 576 (albeit in footnote and long-winded form) with an eye for what the Court wanted – a perspective on how a case like *Volpendesto*, which involves a very eerily similar fact pattern, would fit into the puzzle of analyzing testimonial statements coming from ignorant declarants.  Duggins felt compelled to give his developed perspective, to demonstrate that, and in summation, that *Volpendesto* is an "odd-piece", which doesn't fit into the puzzle.

[4] *But See United States v. Veloz*, 948 F. 3d 418 (1st Cir. 2020) (Court found that declarant's unwitting statement made to informant about a past event admissible without violation to the Confrontation Clause).  However, and even though this result was the result, the Court did not engage in any analysis to determine what the primary purpose of statements were, as it did not appear that defendant *Veloz* made any such challenge.  As such, Duggins submits since the 1st Circuit has not ruled on this precise issue, this Court is free to do so unconstrained.

[5] The Court provided a treasure trove of cases from neighboring circuits – all which stand for the aforementioned proposition.  Duggins has reviewed the cases, and he believes that to repeat the litany of cases here would therefore be unnecessary, as the Court has conveyed the overall consensus about the point quite effectively, and including the case in our own Circuit, and cited in the previous footnote -- *United States v. Veloz*, 948 F.3d 418, 431 (1st Cir. 2020) citing *Davis v. Washington*, 547 U.S. 813, 825, (2006) (noting that "statements made unwittingly to a

Mr. Duggins' own review of the cases cited by the Court about unwitting statements and confrontation rights, all appear to have its genesis from the holding in *United States v. Bourjaily*, 483 U.S. 171 (1987) which however, never really stated as much, and furthermore, where there was no developed analysis for why this was the case, as the decision in *Bourjaily* only dealt with the elements of the coconspirator exception to the hearsay rule, and whether if all of the elements were met, would confrontation be offended.  *Id.* at 173.  A review of that case never revealed a mention from the Supreme Court, opining that a declarant's statements made to a co-conspirator would be "non-testimonial" simply because they are "unwitting".  In fact, the word "unwitting" is never even mentioned within the four-corners of the decision.[6]

Duggins plainly asserts that any statements, whether made unwittingly to a government agent, or not, would be testimonial, so long as they were made under circumstances where there was an "[i]nvolvement of government officers" and with an "eye towards trial".  *See United States v. Feliz*, 467 F.3d 227, 232 (1st Cir. 2006) (citing *Crawford v. Washington*, 541 U.S. 36,

Government informant" are "clearly nontestimonial" (citing *Bourjaily v. United States*, 483 U.S. 171, 181-84, 107 S. Ct. 2775, 97 L.Ed.2d 144 (1987))).  As such, Duggins is now quite aware of the notion that if a declarant unwittingly speaks to a confidential informant, there is recent support, relying upon old-standing precedent, that such a conversation would be considered as "non-testimonial".  However, *Bourjaily* was tendered a long time ago, and was authored at a time when decision in *Crawford* wasn't even a glimmer in the eyes of the justices.  Duggins believes that since *Crawford*, and beyond, we no longer make blanket testimonial assessments about categories of statements.  The proof of this can be seen in the landmark case of *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009) (business records exception once considered as *per-se* non-testimonial would no longer fall into that category if the primary purpose for generating the record was for future prosecution).  This holding teaches us that we apply the primary purpose test to determine whether a statement is testimonial – not skip the test, because of some "*per-se*" secondary rule of Federal Evidence, claiming that it is not.  Duggins appreciates that the Supreme Court has stated – albeit in *dicta*, that unwitting statements made by declarants are non-testimonial.  *Davis* at 825.  However, they said the same thing about business records, in *Crawford*, *id.* at 56, until they said different in *Melendez-Diaz*.  The point is the Supreme Court has given lower courts a test to apply in this scenario, and Duggins merely asks the Court to apply it, and without first coming to any premature conclusions about the statement upon which it's required to test.

[6] While the term "unwitting" was never mentioned, it is true that the declarant in *Bourjaily* was clueless (or unwitting) that his in-furtherance statements were made to an undercover operative.  However, that fact was not controlling or even relevant in the court's analysis, at all.  What controlled the Court's sentiments was that statements made "in-furtherance" to a conspiracy (whether unwitting or not) do not violate confrontation because, and under *Ohio v. Roberts*, 448 U.S. 56 (1980) such statements are admissible under a firmly rooted hearsay exception, and therefore are deemed reliable alongside an unavailable declarant.  As will be seen, it's not the unwitting nature which makes them reliable, but solely because the statements were not only made in furtherance of a conspiracy, but also to a partner in crime.

56 n. 7 (2004)).   Over time, this concept developed into the "primary purpose" test, to determine whether that objective was being advanced.   *Davis* at 822 ("[Statements] are testimonial when the circumstances objectively indicate…that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."   As such, and in the modern-era, post *Crawford*, we apply this test to determine whether a statement is testimonial – a constitutional test, and Duggins is unaware of how this test of constitutional significance can be subverted, by merely resorting to a rule of evidence which does not contemplate the constitutional question to be answered.   To express this riddle with more clarity, Duggins submits that the constitutional question to be answered is whether Gutierrez's statements were primarily gathered (or procured) with an eye for trial.   By merely concluding that the statements are non-testimonial, it has used that conclusion to subvert answering the constitutional question.[7]

As a result, Duggins must necessarily tackle the Court's *Crawford* question suggested at the status conference – before addressing the Court's pertinent but less loftier concerns posed by the Federal Rules of Evidence.   Therefore, Duggins proceeds to respond to Court Order #566 by first answering the question of whether Mr. Gutierrez's statements are of the testimonial kind, or are they not.   As a secondary argument, Duggins will address the applicability of Fed. R. Evid. 804(b) (3), so that the Court may have what it has ordered in pleading form.

---

[7] Perhaps the Court may conclude that the "unwitting" nature of the statement is just another way of saying that the declarant was not aware of the primary purpose of the interrogation, and so therefore, the "statements were [not] made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *Crawford* at 52.  This argument has some surface appeal when ascertaining the primary purpose of an interrogation, as the beliefs of the declarant do factor into the analysis.  *Bryant* at 1148.  However, and as seen in the section to follow, *infra*, which demonstrates the evolution of the primary purpose test, the declarant's knowledge is just one factor to consider in the totality of the circumstances, and particularly relevant to deciphering the "primary" purpose. *Id* at 1147-48.  For example, the declarant's knowledge bears relevance to determine whether an interrogation was performed to address an on-going emergency, or rather just to investigate a past crime. *Id.*  Duggins submits that if the primary purpose is overtly seen on its' face, after objective appreciation of *all* the facts – which can leave no objective minded person to believe that it was to investigate a past crime, Duggins does not see why one factor (the declarant's knowledge or lack of knowledge) standing alone would change that.

**ARGUMENT**

**I.**

**WHILE THIS COURT RELIES UPON *BOURJAILY v. UNITED STATES* TO SUPPORT ITS THEORY THAT AN UNWITTING CONFESSION MADE TO AN UNDERCOVER AGENT WOULD NOT OFFEND CONFRONTATION, A REVIEW OF THE CASE DOES NOT ACTUALLY SAY AS MUCH, BUT RATHER THE CASE JUST ALLOWS CONFRONTATION TO KEEP ITS DOORS OPEN FOR A FIRMLY ROOTED HEARSAY EXCEPTION – ONE MADE IN FURTHERANCE OF THE CONSPIRACY. BEYOND THAT, *BOURJAILY* HAS PROVIDED NO FURTHER ANALYSIS ON WHETHER UNWITTING STATEMENTS STANDING ALONE ARE NON-TESTIMONIAL; MORE IS NEEDED IN A WORLD POST-*BOURJAILY* TO DECIDE THAT QUESTION AND THAT NEW WORLD BEGINS BUT DOES NOT END WITH *CRAWFORD v. WASHINGTON***

**A.** *Bourjaily v. United States.*

In the case of *Bourjaily*, which was handed down in 1987,  we see a comprehensive analysis of Federal Rule of Evidence 801(d)(2)(E) – coconspirator statements which were found to be made in furtherance of a conspiracy, and the proper evidentiary thresholds which must be satisfied before said statements are allowed into evidence. *See Bourjaily generally.* Putting aside the mechanics the Supreme Court muscled through in order to promulgate those thresholds, the Court also addressed whether the admission of co-conspirator statements violated the confrontation rights of the accused. *Id.* at 182-184.  The Court ultimately held no.  *Id.* However, their reasoning did not appear to have anything to do with whether the coconspirator statement were considered "testimonial" or "non-testimonial", under any present day understanding of the terms.   In fact, the words "testimonial" or "non-testimonial" make no appearance at all in the decision.    Rather, and what the *Bourjaily* court found as the reasoning for why the introduction of the statements made in furtherance of a conspiracy commit no offense against confrontation is as follows:

> "The Court of Appeals held that the requirements for admission
> under Rule 801(d)(2)(E) are identical to the requirements of the

8

> Confrontation Clause, and since the statements were admissible under the rule, there was no constitutional problem. We agree."

*Bourjaily* at 182.[8]

This congruence or friendship that certain hearsay exceptions (and in particular this one – statements made in furtherance of a conspiracy) share with the Confrontation Clause appears to draw its support in from the Court's decision in *Ohio v. Roberts,* 448 U.S. (1980).  A look at that case therefore becomes necessary.

## B. *Ohio v. Roberts*

In *Roberts,* the Court dealt with what it called a "[re]consider[ation] of the relationship between the Confrontation Clause and the hearsay rule with its' many exceptions".  *Roberts*, at 62.  As it pertained to this relationship, the issue seemed to be distilled down to one concern which the Court tried to resolve – does admissible hearsay violate confrontation?  *Id.* at 58 (*Roberts* court recognized the issue concerned the "constitutional propriety" of introduction of admissible hearsay evidence).  In answering that question, it promulgated the following rule, and if the conditions of the rule were met, confrontation would not be offended.   First, the declarant must be "unavailable"; and second, the statement in question must exhibit sufficient "indicia of reliability".  *Id.* at 65-66.  Reliability could be proven by showing that the statement falls within a "firmly rooted hearsay exception" or has particularized guarantees of trustworthiness.  *Id.* at 66.  As such, and if the evidence fell under either category, the statements could therefore find their way inside of a courtroom without the Confrontation Clause blocking its path.

---

[8] To be sure, this type of analysis, where admissible hearsay possess the keys to unlock the castle doors of confrontation, comes from the holding in *Ohio v. Roberts*, but which has since been overruled in *Crawford v. Washington,* 541 U.S. 36, 63 (2004) ("The unpardonable vice of the *Roberts* test . . . [is] its' demonstrated capacity to admit core testimonial [but admissible hearsay] statements that the Confrontation Clause plainly meant to exclude."). *See also Whorton v. Bockting,* 123 S. Ct. 1173, 1175 (2007 (The *Roberts* rule which held that the Confrontation Clause permits the admission of reliable hearsay, was overruled by *Crawford*).

In explaining how hearsay and the Confrontation Clause can co-exist, the *Roberts* court found that their goals were in harmony, as they both longed for only reliable evidence to be given to the trier of fact. *Id.* at 63-65. First the goal of confrontation has the underlying "purpose to augment accuracy in the fact finding process by ensuring the defendant an effective means to test adverse evidence". *Id.* at 65. Secondly, and in order to honor this purpose, the "[c]lause countenances only hearsay marked with such trustworthiness that "there is no material departure from the general rule". *Id.*, citing *Snyder v. Massachusetts*, 291 U.S. 97, 107 (1934). Therefore, and when such reliable evidence gets in front of a jury via firmly rooted hearsay exceptions, then the admission of this type of hearsay "comports with the 'substance of the constitutional protection'" *Roberts* at 66. In closing, the *Roberts* Court found as follows:

> "In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability."

*Id.*

As told, this test was first promulgated in 1980. Seven years later, the ***Bourjaily*** court applied that same test, in the context of a statement made unwittingly by a co-conspirator in furtherance of a conspiracy – which, and based upon the holding in *Roberts*, rendered the statement admissible without a confrontation requirement. *Bourjaily* however, never claimed that the statement met the hearsay exception because it was "unwitting". In fact, the elements for establishing Fed. Rule. Evid. 801(d)(2)(E) has no evidentiary requirement that the statement first be "unwitting".[9]

---

[9] Federal Rule of Evidence 801(d)(2)(E) provides: "A statement is not hearsay if [t]he statement is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." The "in furtherance" requirement tracks the conventional agency rule from which the coconspirator exemption is drawn. The Advisory Committee's retention of the "in furtherance" requirement was motivated by a desire to strike a balance between the need for conspirators' statements in order to combat undesirable criminal activity which is inherently secretive, and the need to protect the accused against idle chatter of criminal partners as well as inadvertently misreported and deliberately fabricated evidence. *Weinstein's Evidence* ¶ 801(D)(2)(E)[01]. *See*

***Back to Bourjaily* –  It just doesn't stand for the proposition that unwitting statements made by conspirators, standing alone, is non-testimonial hearsay.**

Going back to the decision in *Bourjaily*, the Court found that since coconspirator statements made in furtherance of a conspiracy are a firmly rooted hearsay exception, confrontation would not be offended in giving those statements to the trier of fact without first hearing from the declarant.  *Bourjaily* at 182-184.  The Court necessarily relied upon the test it espoused in *Roberts*, to reach what they believed at the time to be the logical result.  *Id.*  What is missing in all of this however, is any developed language for how unwitting statements simply made to a government informant by a declarant (and without being in furtherance or in other words standing alone) bear the necessary indicia of reliability for their admission.  Frankly, we know they don't as Duggins is just unaware of the "unwitting" statements exception to the hearsay rule.[10]

---

*also Krulewitch v. United States*, 336  U.S. 440, 443-44 (1949). Because of the in furtherance limitation on the admissibility of coconspirator's statement, a damaging statement is not admissible under 801(D)(2)(E) unless it tends to advance the objects of the conspiracy as opposed to thwarting its purpose.  Duggins highlights that nowhere does the hearsay exception mention that the statement must be made "unwittingly" before it is considered admissible.  One could argue that it's the "unwitting" nature which makes the statement reliable.  However, that's not entirely accurate.  Rather, it's the overarching notion that partners in crime will not normally lie to each other. *United States* v. *Socony-Vacuum Oil Co.,* 310 U.S. 150, 253 (1940) (The rationale for the hearsay-conspiracy exception is the notion that conspirators are partners in crime).  Thus the term "unwitting" has no real import in the analysis. For example, whether a co-conspirator makes a statement "unwittingly" to a comrade, who was working for the government, or just to a comrade, who was not, either way the reliability of the statement does not change.  Duggins emphasizes this really to show why *Bourjaily* just doesn't stand for the proposition upon which this Court may embrace.  In fact, the term "unwitting" doesn't even appear in the decision.

[10] Duggins recognizes that all this Court need do is review *United States v. Veloz*, 948 F.3d 418, 431 (1st Cir. 2020) which cites *Davis v. Washington*, 547 U.S. 813, 825 (2006) (noting that "statements made unwittingly to a government informant" are "clearly nontestimonial" (which cites *Bourjaily v. United States*, 483 U.S. 171, 181-84, (1987)).  Clearly, the opinion in *Davis* which draws from *Bourjaily* is dicta – meaning citing a holding which need not be developed in the opinion as it has no import to the facts of the case.  *Richmond Health Facilities v. Nichols,* 811 F.3d 192, 201 n.8 (6th Cir.2016).  However, this Court is not necessarily bound by Supreme Court *dicta*, although it is considered highly authoritative.  *See Igartua v. United States,* 626 F.3d 592, 605 n. 15 (1st Cir.2010) ("Carefully considered Supreme Court dicta, though not binding, 'must be accorded great weight and should be treated as authoritative").  Appreciating the aforementioned only means that while this Court may not overrule *Bourjaily*, it can conduct its own analysis as to whether the *dicta* in *Davis* has any authoritative import here.  Of course Duggins submits that it doesn't, and outright suggests to this Court that *Bourjaily* does not stand for the proposition, and which has almost been blindly relied upon by a wealth of circuits, that statements made to a declarant are non-testimonial because they are "unwitting".  Rather they are non-testimonial because they meet the in-furtherance exception to the hearsay rule.  Either way, Duggins seeks a ruling from this Court on this argument.

The point is that the *Bourjaily* case deals with a particular hearsay exception – statements made in furtherance of a conspiracy bear certain "indicia of reliability", not because they were made unwittingly, but simply because they were made to coconspirators in furtherance of the objectives of the conspiracy (unwitting or not). As a quick aside, this Court is well aware of Duggins' arguments claiming that the statements were not made in furtherance of the conspiracy, and therefore rendering any decision in *Bourjaily*, to be inapplicable in any event. *See dkt #334, moving in limine to exclude Gutierrez's statements as not meeting Fed. R. Evid. 801(d)(2)(E).* Moreover, the Court is also well aware of the arguments claiming that Gutierrez's statements were also not reliable. *See Defendant Eliseo Vaquerano Canas & Jonathan Tercero Yanes's Joint Motion in Limine to Exclude Statements Made by Salvador-Gutierrez to CW-13,* filed under seal on September 28th, 2020. Mr. Duggins also seeks to incorporate those arguments by reference here to further advance his argument that all which remains is Guiterrez unwittingly being examined by CW-13, but with no home in any "in-furtherance" hearsay exception, and, if the examination was truly analyzed, was made under circumstances where the ***primary purpose*** was the create the statement for trial, since the government already knew the sum and substance of the statement, and just wanted it documented.

**What is left from Gutierrez's statement?  Answers unwittingly made by a declarant to a government informant, but which are inadmissible under the "in-furtherance" hearsay exception, but also which were gleaned with a primary purpose to create a record of past events with an eye towards trial.**

The above answer Duggins believes states the issue poignantly. To be sure, this is not an issue which the *Bourjaily* court ever dreamed of taking on, for it was not the issue of that day. To be also sure, this is an issue which Duggins believes has NOT been squarely addressed by

this Circuit, or our Supreme Court, and so therefore it is ripe for development.[11]   The issue is

one of "testimonial" vs. "non-testimonial", and the question is, would Mr. Gutierrez's statements

(even of the unwitting kind but), which came from the product of a question and answer between

him and an informant, and which was specifically designed to create a record of a past event with

an eye for trial, be testimonial under the present day definition of the word.  Finally, Duggins is

also sure that we have to answer that ultimate question through a lens which comes into focus

post-*Roberts* and post-*Bourjaily* – with that lens beginning with *Crawford v. Washington*.

## II.

**CRAWFORD v. WASHINGTON AND ITS PROGENY HAVE LAID THE GROUNDWORK FOR ANSWERING THE ULTIMATE QUESITON IN THIS CASE – WHETHER GUTIERREZ'S UNWITTING STATEMENTS MADE TO A CONFIDENTIAL INFORMANT, BUT WHO ALSO HAD THE PRIMARY PURPOSE OF CREATING A RECORD OF A PAST EVENT WITH AN EYE FOR A FUTURE TRIAL WAS TESTIMONIAL; DUGGINS BELIEVES THAT ONCE THE PRIMARY PURPOSE OF THE STATEMENT IS GIVEN ITS PROPER ATTENTION, NO OTHER SENSIBLE EXPLANATION EXISTS OTHER THAN IT WAS TESTIMONIAL.**

### *Introduction*

As the Defendant knows this Court is well-aware of *Crawford*, he will get right to the

point and state the landmark rule contained therein, and which actually overruled *Roberts*:

> "[t]estimonial statements of witnesses absent from trial" are admissible
> "**only** where the declarant is unavailable, and **only** where the defendant
> has had a prior opportunity to cross-examine [the witness]."

541 U.S., at 59.  Actually, and upon further review of the decision in *Crawford,* we see the focus

of Justice Scalia's analysis to reflect upon *Roberts'* lack of fidelity to the Framers' intentions.  *Id.,*

at 42 ("Petitioner argues that [the *Roberts*] test strays from the original meaning of the

Confrontation Clause and urges us to reconsider it.");* id.* at 61 ("Although the results of our

---

[11] In *United States v. Veloz*, 848 F,3d 418 (2020), the Court had the issue within its' midst, but did not have occasion to address it, simply because it appears from review of the case that Mr. Veloz did not raise and/or develop it.

decisions have generally been faithful to the original meaning of the Confrontation Clause, the same cannot be said of our rationales."). Accordingly, the *Crawford* Court appeared to overrule *Roberts* as to "testimonial evidence," holding that "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id. at* 68.

As a result of *Roberts* being overruled in 2004, the question is thus begged – did the newly found but long-overdue originist approach by our Supreme Court suggest that we have now reverted back to some extreme result, opining that all hearsay (and particularly co-conspirator hearsay) statements were now automatically excluded when the declarant is unavailable, and where the defendant had no prior opportunity to cross-examine the witness? Wishful thinking on Duggins part will not promote this outcome.  This is because and "where nontestimonial hearsay is at issue," however, the *Crawford* Court found it "wholly consistent with the Framers' design to afford the states flexibility in their development of hearsay law — as does *Roberts,* and as such would be an approach that exempted such statements from Confrontation Clause scrutiny altogether."  *Id.*.

As a result, Duggins therefore concedes that after *Crawford,* the Confrontation Clause does not ban all hearsay, but only hearsay of the testimonial kind. Therefore, the only question to really answer is whether Gutierrez's statements are testimonial.   Duggins believes that this Court cannot however, rely upon caselaw, which pre-dates *Crawford* for the most precise answer.  Duggins believes he has proven this in section I of his argument.  Therefore the Court must look forward on the path, considering *Crawford* and beyond, which appears to give the definition of testimonial more shape and substance with each passing case and decision.  The cases which Duggins will reference on this path he is most certain this Court has reviewed *ad*

*nauseum*.  However,  and Duggins believes that "one more time" could potentially be helpful, so that the Court can actively see the evolution of the doctrine on "testimonial" evidence, and most importantly the birth of the ***primary purpose*** test which has been hatched within the same.

**A.   A hopefully helpful refresher on the definition of testimonial evidence – with particular emphasis upon the "primary purpose" test.  However, we must start with *Crawford* which only begins to define the scope of what constitutes testimony.**

As we see in *Crawford*, the Supreme Court stated that at a minimum the definition of testimonial covered: a) prior testimony at a preliminary hearing; b) testimony before a grand jury; and c) testimony at a formal trial.  *Id.* at 68.   The minimalist definition also covered police interrogations as well.[12]   The facts in *Crawford* fell easily under this last category, as they bear out a very formalistic exchange between law enforcement and a declarant – which followed a *Mirandized* setting at the station house, and which was also tape-recorded.  *See* 541 U. S. at 53, n. 4.  Because the *Crawford* court need not look to the minimalist definition of testimonial to decide the case, it saw no need to "spell out a [more] comprehensive definition".  *Id. at 68*.  *See also United States v. Lynn*, 851 F. 3d 786, 792 (7th Cir.2017) ("Crawford left for another day any effort to spell out a comprehensive definition of testimonial.") (internal citations omitted).

Indeed as such, and without any further guidance, the Supreme Court has given its lower courts broad factual storylines to ponder.   However, and as the years have progressed beyond

---

[12] The Court in *Crawford* also explicitly declined to define the scope of the phrase "police interrogation".  *Crawford*, at 76 n. 4. The court explained that the term should be used in its' "colloquial" not "technical" sense. *Id.*  Further, the definition of interrogation is a "practice that the police should know is likely to evoke an incriminating response" and can "only extend to [those] words or actions on the part of police officers".  *See Rhode Island v. Innis*, 446 U.S. See also *United States v. Birbal*, 113 F.3d 342, 346 (2nd Cir.1997) ("…an informant becomes a government agent…only when the informant has been instructed by the police to get information about the particular defendant.") See also *United States v. D.F.*, 63 F.3d 671, 682 n. 16 (7th Cir.1995) (key inquiry is whether "the government directed the interrogator toward the defendant in order to obtain incriminating information).   291, 300 (1980).  As a result, Duggins submits that although a confidential informant is not "technically" a police officer, but rather an agent of them, he is placed in no lesser understanding when considering the term interrogation.  At any rate, however, the *Crawford* Court instead provided clear indications that its holding on what amounts to testimonial was a broad one. *Crawford* at 68.  ("Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.").

*Crawford*, our highest court has been quite forthcoming with an eye for precision on how lower courts must define "testimonial evidence", which now includes the consideration of the primary purpose test within that definition.

1.  ***Davis v. Washington* & *Hammon v. Indiana* – an introduction of the primary purpose test for determining whether statements are testimonial.**

Just two years later, in 2006, we see two more cases which have to build a framework around Crawford's historically grounded discussion of what makes a statement "testimonial". Upon review of these two cases, we see for the first time the Supreme Court introducing the "primary purpose" test.   These were the companion cases of *Davis v. Washington*, and *Hammon v. Indiana*, 547 U.S. 813 (2006).  The *Davis* court analyzed the factual differences between *Crawford* and these two companion cases, which ultimately called for the Supreme Court to construct this helpful test.

a.  ***Crawford* involved a fact pattern which involved a criminal investigation which sought to gather evidence of a past crime of a domestic dispute, which was thereafter submitted at trial (without confrontation) and where ultimately said evidence served to convict the perpetrator.**

In *Davis,* the Court found that the fact pattern in *Crawford* dealt with a criminal investigation, which involved a very formalistic question and answer between police officer and civilian, solely directed at "***establishing the facts of a past crime, in order to. . . provide evidence to convict the perpetrator.***"  *Davis* at 826 (emphasis added).   The *Davis* court went on further state that the "product" of such [questioning] is testimonial.[13]  *Id.*   ("The product of such interrogation, whether reduced to a writing signed by the declarant or embedded in the memory (or perhaps notes) of the interrogating officer, is testimonial") (emphasis added).

---

[13] Testimonial is, in the terms of the 1828 American dictionary quoted in *Crawford,* "'[a] solemn declaration or affirmation ***made for the purpose of establishing or proving some fact.***'" 541 U. S., at 51.

**b.** ***The outline of the facts in Davis also involved a domestic dispute, but involved a less formalistic interrogation than in Crawford. It is upon comparison between the two where the Davis court saw fit to draw a line between proving past facts for prosecution, and addressing current non-investigatory needs in defining what is testimonial.***

In *Davis,* and in stark contrast to *Crawford* however, we don't have a question and answer at a police station about a past crime, but rather a **purpose** which involved an on-scene investigation "about events as *they were actually happening*".  *Davis* at 822.   In addition, the investigation seemed to have a **purpose** in dealing with an "on-going emergency", requiring immediate police assistance.  *Id.*  In recognizing this, the Supreme Court thereafter differentiated the facts in *Davis* from the facts in *Crawford*, stating that the designs were different, where one was "***designed  primarily to*** 'establis[h] or prov[e]' some past fact" and the other was to address with a design to "address current circumstances requiring police assistance".  *Id.* at 827 (emphasis added).  As a result of the aforementioned differences with respect to the purposes of each investigation, also considering additional factors such as lack of formality, alongside of what a reasonable person would perceive what was happening (present emergency or past investigation) the *Davis* court saw enough of a difference to opine that as far as the facts in *Davis* were concerned, the declarant's statements had a primary purpose of meting an on-going emergency, and therefore his statements were "non-testimonial".  *Id* at 822.[14]

---

[14]  The additional factors relied upon by the Court – "formality" and "perception of the declarant", were factors which fostered help to the *Davis* court in their determination of their ultimate conclusion – that the police were on scene to meet an on-going emergency, and not to investigate some past event.  In *Davis,* the person was not in a police station but on a phone with a 911 operator – which is specifically designed to address emergencies, and the caller perceived the call as such – an emergency, otherwise there would be no reason to call 911. *Id.* at 827. Duggins submits that in the context of that fact pattern, no inference can be drawn that the primary purpose of the statements given were for use at trial, and particularly considering the lack of formality and the caller seeking emergency services.   Those facts would be easily distinguished here, as it wasn't Gutierrez who sought out the government for help, but rather the other way around – they sought him out, and not for any on-going emergency but rather with the ***primary purpose*** of using his statements with an eye for future prosecution, and ***already aware of what he would say.***

Thus, and in this first decision after *Crawford*, we are beginning to see the lines which are being drawn, to identify the primary purpose of law enforcement's objectives, at the precise moments when they speak to declarants.   In the *Davis* case, the Court interpreted those lines to conclude that law enforcement's primary purpose was to investigate an on-going emergency, in lieu of some investigatory goal of prosecuting some past crime, and under the former goal, confrontation would not apply.

    **c.**   ***The facts in Hammon also involved a domestic dispute, but this time the Court found the declarant's statements testimonial because, and this time, the primary purpose of the exchange reverted back to investigatory objectives.***

In *Hammon*, we see that law enforcement responded to a "reported domestic disturbance" at the home of the defendant (husband Hershel Hammon) and declarant (wife Amy Hammon). *Id.* at 819.   After an investigating police officer heard Amy's verbal account (an apparent attack upon her by Hershel) he thereafter had her "fill out and sign a battery affidavit", which inculpated her husband Hershel.  *Id.* at 820.   After Amy failed to appear for trial, the officer testified as to what Amy had told him, along with her supporting affidavit being introduced, but over the confrontation objection by defense counsel.  *Id.*   In overruling the defendant's confrontation challenges, the state court found two separate hearsay exceptions: 1) Amy's oral statements admissible as an excited utterance; and 2) her affidavit admissible as a present sense impression.  *Id.*   Hershel was found guilty of the charges lodged against him for the attack on his wife, and after appealing the conviction to the Indiana Supreme Court, claiming that all of Amy's statements were testimonial, and therefore being barred by the Confrontation Clause, the Indiana Supreme Court affirmed the conviction.  *Id.* at 821.   In so doing, it fashioned a definition of testimonial whereby it stated the following:

> "a testimonial statement is one given or taken in significant part for
> ***purposes of preserving it for potential use in legal proceedings,"***

> *where the motivations of the questioner and declarant are the central concerns.".*

*Id.* at 821 (emphasis added).[15]

In applying this definition, the Supreme Court of Indiana therefore found that Amy's oral statement was not "testimonial" based upon its belief that her oral statement was made to police who were responding to an emergency, and where Amy's motivation was not to have her husband's statements to be used at trial.  *See Hammon v. State*, 829 N.E. 2d 444, 458 (2005). With respect to Amy's written affidavit, the state court found that it was testimonial and thus wrongly admitted, but the error was harmless due to it being a bench trial.  *Id.* at 458-59.   The United States Supreme Court reversed, finding all of Amy's statements as testimonial.  *Davis* at 833.

In so doing, the Court found the analysis easy, and again reverted back to analyzing what the primary purpose was for the statements – which was to investigate a past crime.   See the language below:

> "It is entirely clear from the circumstances that the interrogation was part of an investigation into possibly criminal past conduct— as, indeed, the testifying officer expressly acknowledged, App. in No. 05-5705, at 25, 32, 34. There was no emergency in progress. . . When the officer questioned Amy for the second time, and elicited the challenged statements, he was not seeking to determine (as in *Davis*) "what is happening," but rather "what happened." Objectively viewed, <u>the primary, if not indeed the sole, purpose of the interrogation</u> was to investigate a possible crime—which is, of course, precisely what the officer *should* have done."

---

[15] The Supreme Court of Indiana further opined that "[i]n evaluating whether a statement is for purposes of future legal utility, ***the motive of the questioner more than that of the declarant, is determinative, but if <u>either</u> is principally motive by a desire to preserve the statement it is sufficient to render the statement "testimonial".***  *See Hammon v. State*, 829 N.E.2d 444, 456 (2005) (emphasis added).  The United States Supreme Court in finding Amy's statements testimonial, never indicated that it disagreed with this definition. See also *Davis*, 547 U.S. at 828, 830, 126 S.Ct. 2266 (focusing on the primary purpose of the 911 operator's interrogation in determining whether the answers elicited were testimonial). If this Court were to apply this definition of testimonial, there would be absolutely no doubt, that Gutierrez's motive for speaking, which was the product of trickery, and still unclear as to what exactly he was thinking (coercion, fear, bragging, self-preservation, etc.) would not hold more weight than that of CW-13 or the government, whose motives are not in dispute.

*Id.* at 829-30 (emphasis added).[16]

Hence, and with the decision in *Hammon*, the primary purpose test was born.

### d. The primary purpose test.

Under that test, "[s]tatements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the "primary purpose" of the interrogation is to enable police assistance to meet an ongoing emergency. *Id.* By contrast, statements are "testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to "establish or prove past events potentially relevant to later criminal prosecution". *Id.* Again, and although Duggins submits that the two cases (*Davis and Hammon*) do not involve facts akin to this one (declarants making statements to government operatives), at the very least, one can see with the Court's commentary contained within the decision has them "primarily" concerned with two questions after *Crawford*: 1) was the product of the questioning to establish facts of a past crime; and 2) was the primary purpose of the questioning to establish those facts.

### 2. *Melendez Diaz* – a pivotal case in the discussion, as the primary purpose test is no longer limited to police interrogations.

In 2009, we start to see a glimpse of how the confrontation clause can have application outside of the interrogation concept, so long as the ***primary purpose*** of gathering the information was for use at trial. *See. e.g., Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321 (2009)

---

[16] It is quite noteworthy that the oral statements which Amy made to the officer, while testimonial, did not come to her under some formalistic setting, and particularly where she would have necessarily perceived that the officers were questioning her with an "eye towards trial". In fact, the Court focused on the information coming from Amy as it pertained from the officer's perspective, for use in **his** "investigat[ion]." *Id.* at 820, 830 (emphasis added). Such statements under such an official question and answer between officer and civilian are an obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination; they are inherently testimonial. *Id.* In light of this, all Duggins asks this Court to do is listen to the tape recording of the question and answer between CW-13 and Mr. Gutierrez, and determine what it thinks. After one listen, we can see the functional equivalent of what a witness does on direct examination. There were non-leading questions by CW-13, designed for Gutierrez to give all sorts of narrative answers. Mr. Salvador Gutierrez's statements were inherently testimonial.

(business records are typically non-testimonial, but if the records were generated (regularly conducted business activity) for the production of evidence for use at trial, they would be testimonial and barred without the person (chemist) who generated the record).  As was specifically observed in that case, business and public records 'are generally admissible absent confrontation…because – having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial – they are not testimonial." *Id.* at 2539-2540.[17]

In other words, business records, and while admissible under relevant hearsay exceptions would be excluded under constitutional grounds if the primary purpose of generating the record was for use at trial.  *Cf. Giles v. California*, 554 U.S. 353, 376 (2008) (statements made to friends and neighbors about abuse and intimidation and statements to physicians in the course of receiving treatment, not excluded under confrontation, but only by hearsay).  Once again, we can

_____

[17] See also *Michigan v. Bryant*, 131 S. Ct. 1143, 1175 (2011) (finding that the Sixth Amendment admits business generally records into evidence, but from a perspective of confrontation, the clause does not get in the way because the records are reliable or because hearsay law says so, as once believed was the case under *Roberts*, but because and for what was precisely said in *Melendez-Diaz*, since under the primary purpose test they are not generated in order to establish or prove some fact at trial). *Id.* at 2539-40 (Business and public records are generally admissible because they are generated by a neutral party without an eye for trial, not because of some hearsay rule. However, if they are created through government involvement with the purpose of establishing or proving some fact at trial they are testimonial and subject to confrontation).  The same can be said in this case – that statements made by declarants to informants can be generally admissible without violation of confrontation, not because they are admissible hearsay, but rather and under the primary purpose test, they would necessarily be admitted to address some present situation, and not investigate past facts.  *See e.g., United States v. Ciresi*, 697 F.3d 19 (2012) (statements made in furtherance of the conspiracy, which appear to have a primary purpose to address and dismantle an active and present crime, admissible without a confrontation violation, but without any analysis on the statement's primary purpose).  Under these type of criminal investigations, nobody really knows whether the informant will obtain relevant evidence, because, and before the substantive crime (controlled buys and/or other criminal activity) is actually consummated, there is nothing to document.  A drug deal could easily go "south" and a prosecution could be foiled.  People can change their minds and withdraw from conspiracies.  However, and for past-crimes their deeds cannot be reversed.  Perhaps the Court can now see the difference between cases where informants being involved in "on-going" criminal activity, and cases where informants are sent in to merely get a record of "past events" of a past conspiratorial crime, and from a person who is in jail, and with no evidence that the person is actively or currently engaged in conspiratorial activity.  The investigator is sent in merely to create a record of the known and past information for use at trial.  Duggins would submit that statements made by declarants during the former scenario would not pass the primary purpose test, much like the officers responding to the scene of a crime to address an "on-going emergency", would not either.  Duggins hopes that this Court is beginning to see how the isolated circumstances in his case can advance a confrontation challenge, after applying his facts to the primary purpose test.

see from this contrast of the analysis on whether hearsay is "testimonial" hinges (or the very least relies in large measure) upon the primary purpose of the statement – in the context of whether it will be used for trial or not.

What could also have application in the analysis is whether the government intends to use the statement at trial to "evade confrontation". *See Giles at 2693* there is no suggestion that the prosecution attempted to offer [Ms. Avie's] hearsay evidence at trial in order to evade confrontation." See *id.,* at 840, (THOMAS, J., concurring in judgment in part and dissenting in part).   Here, there can be no question, and in any event Duggins is making the suggestion, that the government will be attempting to offer the Gutierrez recording to serve as a substitute for the real thing, and thus constructively evading confrontation.[18]

       **a. As an additional matter, *Melendez-Diaz* closes the door on making assumptions about certain categories of evidence, giving them a passport to by-pass the primary purpose test analysis, and enter through customs without hindrance by the Confrontation Clause, because they have (once upon a time) been perceived as being non-testimonial.**

The flowery airport language above is used by Duggins just for effect.   The point is that after review of *Melendez-Diaz*, we can no longer make assumptions about certain "categories of hearsay" – finding them automatically as non-testimonial, and therefore admissible without consideration of the primary purpose for why the statement was created.  Upon review of the decision, we see a general business-records exception to the hearsay, historically bypassing confrontation, because it was considered to be non-testimonial.  After the decision came down in *Melendez-Diaz*, that sort of "passport" has been revoked.  This is because and see the following:

---

[18] To come to this conclusion, Duggins asks the Court to merely look at what happened.  The government gets wind that CW-13 – a person who is already under contract with the government, tells them about his freelance activities in getting Gutierrez to bare his soul.  They know they can never get Gutierrez to sign an affidavit, attesting his crimes, so they get the next best thing – a recording of him, and under circumstances which are perhaps even better than the affidavit.  Under this scenario, the affidavit must be confronted (under principles of confrontation), but the recording need not?  It sends a clear message to prosecutors that by getting the recording, one can evade the confrontation clause.

> "*This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances.*"

*Crawford at* 76 n. 7 (emphasis added).  *See also Melendez-Diaz* at 2539-40. [19]

As this is the case, we can see just how pivotal the decision in *Melendez-Diaz* is, not only to show how the primary purpose doctrine is evolving, to transcend mere encounters between civilians and police, but also, to show lower courts that with this new way of approaching Confrontation Clause fact-patterns, the primary purpose test can't be skipped over in favor of a differently-styled analysis, and one which favors some broad modern hearsay exception to decide this constitutional question.  *See also Crawford* at 65. ("some of the courts that admit **"untested testimonial statements"** find reliability in the very factors that make the statements testimonial") (emphasis added).[20]

Dugginis cites to this opinion by Justice Scalia, as it appears to suggest that we can't just leave proposed statements, which seek entry into a trial, with keys without them first knowing the password.   Here the password is stating an answer in response to the gate keeper's question "what is your primary purpose"?   If the statements tell him or her – "I am here to prove a past-fact related to future prosecution", then the gatekeeper denies entrance.

After *Melendez-Diaz*, the analysis on primary purpose doesn't end with the aforementioned expansion of the doctrine.  Just two years later, the doctrine receives a further boost, and in a direction which further assists Duggins' in his particular fact-pattern.

---

[19] See accord *United States v. Cameron*, 699 F. 3d 621, 644 (1st Cir.2012) (the primary purpose of the reports was to establish or prove past events potentially relevant to later criminal prosecution).

[20] To be sure, our own Circuit in *Veloz*, did what *Crawford* prohibits..  *See id., generally* (The *Veloz* court granted admission to statements proving a past-fact for future prosecution, without conducting the primary purpose test).  However, and to be fair to the Court of Appeals, this issue was never brought to their attention, and thus they were without the necessary tools to hear developed analysis on the point, let alone rule on it.

### 3. *Michigan v. Bryant*

In *Michigan v. Bryant*, 562 U.S. 344 (2011), we come across additional help in appreciating the scope of the primary purpose test.  The *Bryant* Court explained that the question of primary purpose must be viewed objectively and in full context, to determine whether the primary purpose of the declarant's statements was to "creat[e] an out of court substitute for trial testimony.  *Id*. at 358. Of note is the fact that the Court specifically ventured broader than its holdings in *Davis* and *Hammond*.  In those fact patterns, the application of the primary purpose test focused upon the existence of an ongoing emergency.   Yet in Bryant, the Court cautioned that what *Davis* meant by ongoing emergency should not be taken to imply that the existence *vel non* of an ongoing emergency is dispositive of the testimonial inquiry. "  *Id.* at 366.   Instead, an "ongoing emergency" is simply just one consideration when applying the primary purpose test. *Bryant* thus made clear, that with its objective view on the full contextual assessment of an "interrogation's primary purpose", that the totality of the circumstances guides the primary purpose test, not any one factor.   It also became patently clear that these factors include both the statements and the actions of the declarant, as well as the interrogator.[21]

> **a.** **In dissecting the *Bryant's* totality of the circumstances test, we see that it expands the "core class of testimonial statements" by not limiting the testimonial nature of a statement based exclusively upon whether a declarant would reasonably expect that the statement would be used prosecutorially.**

As seen in Justice Scalia's opinion in *Crawford*, he outlined the obvious areas of testimonial statements, and which included "material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," Brief for Petitioner 23;

---

[21] Which appears that this holding sits in conflict with the analysis done in *Valpendesto*.  *Id*  at 289-90.

"extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,". *Id.* at 51-52.

Moving forward to *Bryant*, and although the Court did not specifically offer any new definitions of testimonial statements, what it did do was require "An objective analysis of the circumstances of an encounter and the statements and actions of the parties to it provides the most accurate assessment of 'primary purpose of the interrogation'"). *Id.* at 1156. The Court also shifted the focus from just the formality of the encounter and the perspective of the declarant to **both the declarant and questioner.**[22] *Id.* at 1160 ("The statements and actions of the declarant and interrogators provide objective evidence of the primary purpose of the interrogation.") (emphasis added). Therefore, the question was no longer purely about the formality in which the encounter occurred (as in *Crawford*),[23] and what declarants would reasonably expect to be used is just one factor to be consider in an overall objective primary purpose analysis. *Davis* at 1156.

Duggins submits that the holdings in *Bryant* currently serve as the final edition on how Courts are to solve the testimonial puzzle.[24] This final edition, in seeking to determine the primary purpose of an investigation relies upon two objective factors: 1) the circumstances in which the encounter occurred; and 2) the actions of both the declarant and interrogators. *Id.* at 1156, 1160. The *Bryant* Court additionally warns that "looking solely" to one participant is fraught with problems, "since both interrogators and declarants may have mixed motives." *Id* at

---

[22] As was also done and already mentioned in *Hammon v. State, see, supra.*

[23] *Bryant* also reiterated prior Supreme Court decisions, by stating that formality continued to be an important **but not decisive** factor in determining a statements testimonial nature. *Id.*

[24] As a result, Duggins submit that any case which makes its' analysis without the benefit of *Bryant*, and particularly an analysis of this kind not challenged on the basis (and arguments) which Duggins has made,  would be lacking in the tools it needed to decide its respective case.

1161.[25]

Although Duggins submits that *Bryant* serves as the final edition, the doctrine still has room for growth.  This maturity can be seen flowering in the last the last Supreme Court case on the primary purpose test, which came down in 2015 – the case of *Ohio v. Clark* – which now has now applied the primary purpose test when the questioning is done by a person who is not a police officer.

### 4. *Ohio v. Clark*

In *Ohio v. Clark*, 135 S Ct. 2173 (2015)*,* the Supreme Court has taken the linear timeline, which has discussed the primary purpose test one step further.   In furthering the discussion, the Court has considered the test with regards to statements made to someone who is not a law enforcement officer.   In Clark, a preschool teacher noticed injuries to one of her students, L.P. a three year-old boy.  *Id.*  at 2178.  The teacher alerted a colleague and they together questioned L.P. about the cause of his injuries.  *Id.*  The young child identified the Defendant ("Clark" who was the boyfriend of the child's mother) as the perpetrator.  The child's statement which identified Clark were admitted as reliable hearsay by child victims (the child was found to be incompetent to testify) and the Defendant suffered a conviction.  *Id.*  The Supreme Court of Ohio reversed saying that the statements were testimonial, and should have been barred under the Sixth amendment, and our Supreme Court believed the opposite and reinstated the conviction. *Id.* at 2177, 2179.

---

[25] "Victims are also likely to have mixed motives when they make statements to the police. During an ongoing emergency, a victim is most likely to want the threat to her and to other potential victims to end, but that does not necessarily mean that the victim wants or envisions prosecution of the assailant…alternatively…the answers may be simply reflexive." *Id.* This part of the analysis is important, especially when considering that the statements in *Hammon* were considered testimonial, despite there being no indication that (prior to the affidavit) the witness believed the statements to be available for use later at trial. *Davis at* 820, 830.

Again the Court reverted back to the primary purpose test and found that the primary

purpose of the questioning of the teachers was to "protect L.P." and not to gather evidence for a

prosecution, and therefore finding the declarant's statements as "non-testimonial". *Id.* at 2181

("There is no indication that the primary purpose of the conversation was to gather evidence for

Clark's prosecution.").  In considering the totality of the circumstances, the *Clark* Court did note

other factors which fortified that it was non-testimonial, including, the child's age – which

refutes the notion that he was capable of making testimonial statements. *Id.* at 2181-82.

Duggins merely provides this last stop on the testimonial train to merely demonstrate the

importance of what is in the mind of the interrogator when determining the primary purpose for

the obtaining the statements of the declarant.   Where we are presently with all of this, and after a

culmination of all the aforementioned Supreme Court cases, we see that:

> "A statement is testimonial for Confrontation Clause purposes if it was
> originally ***made or procured*** with the primary purpose of creating an out-of-
> court substitute for use at a future criminal trial."

*Washington v. Griffin*, 876 F.3d 395, 404 (2nd Cir.2017) (emphasis added).[26]

What is interesting about this definition is that it seems to mirror the definition given in

*Hammon v.* State, which is as follows:

> "[i]n evaluating whether a statement is for purposes of future legal
> utility, ***the motive of the questioner more than that of the declarant,***
> ***is determinative, but if either is principally motive by a desire to***

---

[26] "Most recently, the Supreme Court has noted that 'under our precedents, a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial' – that is, in light of all the relevant circumstances, viewed objectively, the statement was made or procured with a primary purpose of 'creating an out-of-court substitute for trial testimony.'" Citing *Ohio v. Clark,* U.S. 135 S. Ct. 2173, 2180 (2015) quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S. Ct. 1143 (2011); Another circuits have expressed the exact same interpretation citing *Bryant* and *Clark*.  *See e.g., United States v. Mathis*, 932 F. 3d 242, 255 (4th Cir. 2019) ("More recently, the Court has explained that a statement is testimonial in nature if the statement was ***made or procured*** with the primary purpose of creating an out-of-court substitute for trial testimony." (internal citations and quotations omitted) (emphasis added).; *United States v. Causevic*, 636, 1007 (8th Cir. 2011) (J. Shepherd Concurring) ("Although *Crawford* did not provide a comprehensive definition of the term "testimonial," subsequent Supreme Court decision have clarified that whether a statements is testimonial depends on the primary purpose for which the statement was ***given or procured***.") (emphasis added).

> *preserve the statement it is sufficient to render the statement "testimonial".*

*See Hammon v. State*, 829 N.E.2d 444, 456 (2005) (emphasis added).[27]

In addition, Footnote 26 is evidence that many of our sister circuits of has also adopted the same definition.  As such, the evolution of the definition of testimonial has seem to ended up with some consensus, and pursuant to *Clark*, that a statement is testimonial if its' either: a) "made" (and from the state of the mind of the declarant) for the primary purpose of creating an out-of-court substitute for use at a future trial, or b) procured (from the mind of the interrogator) with that same purpose.  Ultimately, and under *Bryant*, both are relevant to the ultimate determination of the interrogation's primary purpose, but where it is just patently obvious from the factual context of the case, Duggins sees no reason to look further than the purpose of the interrogator, where his primary if not sole purpose, was to create a record of past events for prosecution). I'm trying to avoid looking into the mind of CW-13.

## III.

**BASED UPON THE EVOLUTION OF THE PRIMARY PURPOSE DOCRTRINE AND ENDING WITH *OHIO v. CLARK*, DUGGINS SUBMITS THAT THE PRIMARY PURPOSE OF THE QUESTION AND ANSWER OF MR. SALVADOR GUTIERREZ WAS TO CREATE A RECORD FOR TRIAL OF A PAST EVENT, AND THEREFORE HIS STATEMENTS WERE TESTIMONIAL AND THEREFORE BARRED BY THE CONFRONTATION CLAUSE UNLESS HE WERE TO TESTIFY.**

Mr. Duggins believes he can rely upon everything conveyed thus far, to support the argument above in bold/capitalized faced.  But to capsize it in a nut-shell, he believes the Court can make the following findings of fact and conclusions of law:

1. Mr. Djavier Duggins was indicted for a RICO conspiracy, where the government has alleged Duggins was a Member of the transnational organization, "MS-13", a

---

[27] See also *United States v. Caraballo*, 595 F. 3d 1214, 1229 (11th Cir. 2010) ("The Supreme Court has instructed us to look only at the *primary* purpose of the law enforcement officer's questioning in determining whether the information elicited is testimonial."); also *United States v. Noria*, 945 F. 3d 847, 855 (5th Cir. 2019).

criminal enterprise which advance the following conspiratorial goals (as alleged in the indictment):

    a.   Promoting and enhancing the prestige, reputation, and position of the enterprise with respect to rival criminal organizations;

    b.   Preserving and protecting the power, territory, and criminal ventures of the enterprise through the use of intimidation, threats of violence, and acts of violence, including murder, attempted murder, and assault;

    c.   Keeping victims, potential victims, and community members in fear of the enterprise and its members and associates; and

    d.   Ensuring discipline within the enterprise and compliance with the enterprise's rules by members and associates through threats of violence and acts of violence.

2.   In proving Mr. Duggins' alleged agreement to join and/or involve himself in said conspiracy, the government seeks to utilize the statements of a co-conspirator, "Guiterrez", made to a cooperating witness, "CW-13", where statements itemizing past events involving the conspiratorial goals, and where these past events also implicated Mr. Duggins in the alleged conspiracy; *See dkt # 364, Ominbus Opposition of the United States to Motions in Limine Regarding Co-Conspirator Statements.*

3.   At the time Mr. Gutierrez made these statements, he was in jail, and although alleged to have still been a member of the conspiracy, but with no evidence that he was actively engaged in conduct while in jail, and specifically done with the intent to

further the conspiratorial goals of the alleged criminal enterprise as listed in the indictments;

4. CW-13 had at least two interactions with Gutierrez: 1) the first time Mr. Gutierrez made unwitting (meaning unaware of CW-13's identity as a government cooperator) oral statements to him which implicated other members of the alleged conspiracy including Duggins;  *See Gov't Discovery Letter Dated Aug. 9, 2019;*[28] and 2) the second time Mr. Guttierez made the same exact statements, but this time while also unwitting of the fact that Mr. Guttierez was being recorded by CW-13. *See Affidavit in Support of Search Warrant for 23 Stone Place and 181 Central Ave.*[29]

5. At the time Mr. Gutierrez made the statements, and because he was "unwitting" as to the governmental agency status of CW-13, Mr. Guitterez would have had no knowledge that either of his statements would be used at trial.

6. This Court, and upon proper challenge (which has been made here) must determine whether Mr. Guttierez's statements were testimonial, and therefore barred by the Confrontation Clause of the Sixth Amendment to the United States Constitution.

7. Under *Michigan v. Bryant*, the Court is required to objectively examine the statements in order to determine it's primary purpose, meaning, whether they were procured to obtain information of a past event, with the primary purpose for use at a future trial.  *Id.* at 1155.

8. The primary purpose test is not limited to mere overt police encounters between civilians and police.  *See e.g., Melendez-Diaz* at 2529 ("The absence of interrogation

---

[28] This letter was filed under seal and is referenced at P. 6 of Exhibit 9 of *Defendant Eliseo Vaquerano Canas & Jonathan Tercero Yanes's Joint Motion in Limine to Exclude Statements Made By Salvador-Gutierrez to CW-13.*

[29] Which was included as sealed exhibit 13, at paragraph 17, with Defendant Eliseo Vaquerano Canas & Jonathan Tercero Yanes's Joint Motion in Limine to Exclude Statements Made by Salvardo-Gutierrez to CW-13.

is irrelevant."); *See also Ohio v. Clark* at 2181 (determining statements "to persons other than law enforcement officers" are subject to the Confrontation Clause and primary purpose test)*.* As such this Court must apply the *Bryant* totality of the circumstances test to the circumstances here – where a declarant makes an unwitting statement to an agent of the government, and where he was unaware of the examiner's primary purpose, but where the primary purpose of the examiner is patently overt.

9.   As a preliminary matter, the Court cannot merely assume that Gutierrez's statements are as a matter of law "non-testimonial", and thereby bypass the *Bryant* totality of the circumstances test. *Melendez-Diaz v. Massachusetts* has taught us the dangers of that. *Id.* at 2539-40 (although "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an execption to the hearsay rules, but because – having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial – they are not testimonial."). In other words, business records are not *per se* nontestimonial, but they are *generally*.

10. Therefore, any *dicta* so proffered by the Supreme Court, which appears to have its roots in *Bouraily v. United States*, cannot stand for the proposition that as a matter of law, merely because a declarant does not know his statement is being secretly recorded for trial, his statement would amount to a *per-se* finding of non-testimonial, and thereby dismiss the required application of the *Bryant* test.

11. The application of the *Bryant* test is a "highly factually contextual inquiry", *Id.* at 1158*,* and is not limited to the line of cases decided before *Bryant*, namely

appreciating an interrogator's primary purpose in the context of "emergencies" v. "non-emergencies".

12. Rather this contextual inquiry seems to appear to hinge upon whether the examination is to address an incident happening presently, or investigation of a past crime, with the product of the latter being "testimonial". *Bryant* at 1157, 1160.

13. As such, and based upon the totality of the circumstances, even including (as it must) the fact that Mr. Guitterez was secretly recorded by the examiner, there can be no question that the primary purpose of the question and answer between CW-13 and Mr. Gutierrez, and actually on both occasions, was to investigate past criminal activity, and create a record of it, for a future prosecution.

14.  The government does not dispute that CW-13 was an agent of the government since the year 2017.  *See CW-13 Cooperation Agreement.*[30]

15. The government also does not dispute that when CW-13 approached Gutierrez: a) the first time, he questioned Mr. Gutierrez with his primary purpose to try and assist the government with collecting information for use for a future prosecution and did so; and b) the second time, with the specific design to generate a more precise record of the same.

16. The government has proffered no reasonable explanation which would allow the Court to conclude that CW-13 extracted any statements from Gutierrez which spoke about present or future criminal activity, which according to the definition of testimonial would appear to be something outside of its' technical language. *See e.g., United States v. Ciresi*, 697 F.3d 19, 30 (1st Cir.2012) ("In sum, Zambarano's

---

[30] Which was included as sealed exhibit 2, with Defendant Duggins' original *Motion in Limine to Preclude Hearsay Testimony of Alleged Co-Conspirators Made to Government Agents, With no Available Hearsay Exception Under F.R.E. 801(d)(2)(E).*

recorded statements to Caranci about Ciresi were all made during the course of and in furtherance of an ongoing…conspiracy in which Ciresi was an active member.").

17. The fact that Mr. Gutierrez made these statements unwittingly does not change the outcome this Court has reached in determining the primary purpose of Gutierrez's statements.

18. It would defy logic that the Confrontation Clause would allow statements from a declarant which were overtly generated for use against a defendant at trial, but then deny the defendant confronting them, because the declarant made them unwittingly.

19. For if the declarant made these same statements to a police officer, he is entitled to confront them; but if he provides the same exact information to an agent of the police, he is not.  In either scenario, the primary purpose is the same, and this Court is not aware of any case handed by the Supreme Court which supports the notion that the Confrontation Clause

20. While if the same information is made by a declarant in one instance to a police officer, and then to a close friend in confidence to another, it is true that confrontation could be required in the former instance, but not the latter. See *Giles v. California,* 554 U.S. 353, 376 (2008) (explaining that statements by abused women to friends and neighbors about abuse and intimidation and statements to physicians in the course of receiving treatment are not testimonial). However, the only reason for that distinction is because the primary purpose of the person speaking with the declarant, one has an eye for prosecution, and the other does not.  *See e.g., Holland v. Lackner,* Case No. 13-cv-02094-JD (ND California 2015) ("Obviously, the initial statements of Gweneth to her daughter Lauren were not products of an interrogation by a police officer or a

911 operator and there was no evidence that Lauren was acting as an agent for law enforcement…[However] we can conceive of a situation where a family member is merely acting as an intermediary and is asking questions on behalf of law enforcement and relating information directly from a victim to law enforcement or a situation where a victim is having a family member record her statements for purposes of creating a record for later use at trial.") (internal quotations and citations omitted).

21. However, and in this instance, the primary purpose of the interrogation is one and the same, and the Court does not need to look at the declarant's intent to come to that realization.

22. Base upon the totality of the circumstances, therefore, Mr. Salvador Gutierrez's statements to CW-13 are testimonial.

**IV.**

**IF GUTIERREZ'S STATEMENTS ARE TESTIMONIAL, THE PENAL INTEREST HEARSAY EXCEPTION WOULD NOT SERVE TO OVERRIDE THEIR INADMISSIBILTY AT TRIAL, BUT DUGGINS ASSERTS THAT THE STAEMENTS WOULD NOT SATISFY THE HEARSY EXCEPTION IN ANY EVENT.**

As stated above, should this Court decide that Mr. Gutierrez's statements were testimonial, and therefore inadmissible as being barred by the constitution, the Federal Rules of Evidence cannot serve to override that operation of law.  Cite. As such Duggins submits that this Court need not even reach the Fed. R. Evid. 804(b)(3) – the declaration against penal interest exception.

However, Duggins does not concede that Gutierrez's statements even meet that exception, in any event, and seeks to preserve his objection to that claim.  However, and since Duggins has devoted scores of pages to the constitutional question, and after review of *dkt 575*,

Mr. Gutierrez's response to Court Order #566,, he believes that Gutierrez has effectively briefed

that issue, and seeks to incorporate that by reference.  Duggins is also aware that his co-

defendant (Tersero) is briefing the issue as well, and confidently assumes their work-product will

also makes it mark, and seeks to incorporate and rely upon their briefings as well.

<div style="margin-left: 50%;">

Respectfully Submitted,
DJAVIER DUGGINS
By his Attorney,


/s/ Gordon W. Spencer
Gordon W. Spencer, Esq.
BBO #630488
945 Concord Street
Framingham, MA 01701
(508) 231-4822
</div>

Dated:    February 8, 2021


### CERTIFICATE OF SERVICE

I, Gordon W. Spencer, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 8, 2021.

/s/ Gordon W. Spencer