# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>        v.<br><br>DJAVIER DUGGINS,<br>a/k/a HAZE,<br>                    Defendant. | Case No. 18-cr-10450-MLW-6 |

## SENTENCING MEMORANDUM OF THE UNITED STATES

Defendant Djavier Duggins a/k/a Haze is a long-standing member of the violent gang known as La Mara Salvatrucha or MS-13. Duggins is a leader of the Sykos Locos Salvatrucha clique of MS-13. Duggins committed an attempted murder on behalf of MS-13. Duggins encouraged others to commit murder on behalf of MS-13. Duggins knew that law enforcement's efforts to combat MS-13 violence in Massachusetts led to nearly his entire generation of MS-13 members in Massachusetts being convicted in this District, but Duggins was undeterred from continuing his association with MS-13. Duggins helped recruit and mentor the next generation of MS-13 members, a number of whom ended up participating in a horrific and senseless murder in furtherance of the gang's objectives.

Even though it was plainly foreseeable to Duggins that members of the conspiracy would attempt to commit murder, Duggins is fortunate that the interplay between the RICO statute and Massachusetts state law helped prevent him from facing life in prison. The draft presentence report indicates that if not for the statutory maximum of 240 months that is applicable to Duggins, his guideline sentence would have been life in prison. As things stand, the government respectfully asks the Court to sentence Duggins to **240 months** in prison, to be followed by 3 years of supervised release.

## I.   <u>The Guideline Range for Duggins is 240 Months.</u>

At the sentencing hearing, the Court will need to begin with a calculation of the U.S. Sentencing Guidelines—a regular part of the sentencing process that may be unusually contentious in this case given the argument Duggins has been previewing. The government hopes in this section to provide the Court with a proposed roadmap it can use to dispose of what are likely to be innumerable objections and protests by Duggins.

As background, consistent with the Court's scheduling order, the U.S. Probation Office is still finalizing the presentence report for Duggins. The draft presentence report found that based on the relevant conduct reasonably attributable to Duggins, his offense level was 43 and his guideline sentencing range was life in prison; however, based on the statutory maximum sentence applicable to Duggins, his guideline range was lowered to 240 months. The statutory maximum issue is discussed below, but for present purposes, the government agrees with Probation that the maximum sentence is 240 months, and the defendant's guideline sentencing range should be 240 months.

The problem in this case as we head to sentencing is that Duggins seems entirely unable to admit to anything and is intent on challenging everything. In response to the draft presentence report, Duggins submitted *26 pages of objections* to the Probation Office, contesting nearly every section of the offense conduct and taking issue with nearly every part of the guideline calculations. It is unclear which arguments Duggins will continue to pursue as part of the sentencing process, but the government will almost assuredly file a supplemental memorandum (as the Court has already authorized) once the presentence report is finalized.

For now, the government respectfully proposes a framework for calculating the guidelines that the government believes is more than supported by the evidence, and that

should render almost all of the remaining guideline objections by Duggins as immaterial to the ultimate guideline calculations.  The government does not believe any evidentiary hearing is needed for the Court to reasonably conclude that Duggins' guideline range is at the statutory maximum level of 240 months.  Nor need the Court grapple with a number of the defendant's sentencing disputes challenging probation's applied offense level of 43 (and corresponding guideline range of life in prison).  Instead, the government provides a different framework by which this Court may calculate the applicable Guidelines as to this defendant, which should hopefully further nullify the need for an evidentiary hearing.

Duggins has pleaded guilty to RICO conspiracy under 18 U.S.C. § 1962(d) and has admitted to his participation in a racketeering conspiracy on behalf of the MS-13 enterprise.  Duggins, by his own post-arrest statements, was an MS-13 member for at least a decade.   The evidence, as outlined in the PSR and as available otherwise, is overwhelming that MS-13's core operating principles involve murder.   Courts have repeatedly noted as much in related cases in recent years (discovery from these cases was also turned over to the defendants in this case to show the consensus understanding about the MS-13 enterprise).  As the First Circuit has noted recently:

> MS-13 has gained notoriety for the brutality of its crimes and the relative youth of both its members and its victims....
>
> The core purpose of MS-13 is to kill or maim rival gang members ....

*United States v. Gonzalez*, 981 F.3d 11, 14 (1st Cir. 2020).

> MS-13 has defined its primary mission as killing rivals, especially members of the 18th Street gang. ...
>
> MS-13 members are forbidden from cooperating with law enforcement. A member who cooperates with law enforcement will have a "green light" put on him, which means he will be killed by other MS-13 members.

*United States v. Perez-Vasquez*, 6 F.4th 180, 187 (1st Cir. 2021).  *See also* Superseding

Indictment, ¶ 5 ("MS-13 cliques may have different leaders, chains of command, and areas of operation, but all MS-13 cliques share certain core operating principles, such as the need to attack rivals and those who cooperate with law enforcement against the gang.").

Given Duggins' longstanding membership and leadership role in MS-13, the government submits that the evidence supporting the defendant's guilt as to the charged offense establishes both his knowing participation in a RICO conspiracy, and the foreseeability of certain types of racketeering activity—including conspiracy or solicitation to murder—by co-conspirator MS-13 gang members.

Put another way, even if Duggins claims that he did not have knowledge of any particular murder, there is simply no credible argument that he did not know that the MS-13 enterprise/conspiracy involved a conspiracy or solicitation to commit murder—particularly given his lengthy involvement and role within the enterprise. *See* U.S.S.G. § 2A1.5. The government believes that one way the Court may dispose of most of Duggins' arguments is to simply apply the conspiracy to murder guideline under U.S.S.G. § 2A1.5 and start with a base offense level of 33.

The Guidelines make clear that in the case of a "jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," the "relevant conduct" includes all acts or omissions of others that were:

(i)     Within the scope of the jointly undertaken criminal activity;

(ii)    In furtherance of that criminal activity; and

(iii)   Reasonably foreseeable in connection with that criminal activity.

U.S.S.G. § 1B1.3. In this case, the Court need not strain to find that in the case of a longstanding MS-13 member like Duggins, conspiracy to commit murder—even if viewed

threw the generic prism of "conspiracy to murder gang rivals" or "conspiracy to murder cooperators"—was (i) within the scope of the MS-13 conspiracy; (ii) in furtherance of that conspiracy; and (iii) reasonably foreseeable in connection with that conspiracy. Given his longstanding membership and leadership role in MS-13, Duggins cannot credibly claim that he did not realize that MS-13 gang members may conspire to murder rivals or cooperators. Stated differently, conspiracy to murder was plainly foreseeable to Duggins—indeed, based on his multiple-years of commitment to the MS-13 cause, his own actions are deserving of a conspiracy to murder guideline.[1]

---

[1]     The fact that the government did not seek similar "conspiracy to murder" groupings for some of the codefendants does not alter the analysis—there was just no need to pursue additional enhancements because their guideline ranges were already life in prison. In theory, the codefendants in this case could also have received an additional guideline enhancement for "conspiracy to murder" for their actions in furtherance of the MS-13 enterprise on all the days *other than* July 30, 2018.

Consider the hypothetical of two MS-13 members: Member A and Member B. Assume that Member A joined the MS-13 conspiracy on the morning of July 30, 2018 and then helped commit the murder in Lynn on July 30, 2018. He should get an offense level of 43 for first-degree murder. Assume that Member B joined the MS-13 conspiracy all the way back in 2006, was a leader in the gang, went around committing or encouraging violence, and then helped commit the murder in Lynn on July 30, 2018. He should get an offense level of 43 too for the first-degree murder on July 30, 2018. But theoretically, the Court could also give him a separate group for "conspiracy to murder" for all his actions in furtherance of the conspiracy between 2006 and July 29, 2018.

In the hypothetical above, surely it should not be the case that if the government was somehow unable to prove Member B's actual participation in the July 30, 2018 murder, his offense level would drop all the way from 43 to the minimum RICO offense level of 19. At the very least, Member B should theoretically still receive an offense level of 33 for all of the conspiracy to murder activity across prior years (even if simply a generic agreement to murder rivals and cooperators).

That is essentially the framework the government is proposing for Duggins. Even if Duggins wants to argue that he was not personally involved in any specific murder, the evidence strongly supports his participation in an enterprise where it was reasonably foreseeable to Duggins that members of the enterprise would engage in conspiracy or solicitation to murder.

A finding that the conspiracy to murder on behalf of MS-13 was reasonably foreseeable to Duggins requires no hearing at all. The Court can reasonably make that finding based solely on (i) his prior attempted murder conviction; (ii) his post-arrest statements, (iii) the recorded statements of co-conspirator Salvador; and (iv) the recorded statements of co-conspirator Lopez. The knowledge, intent, and agreement shown by that evidence itself establishes a base offense level of 33 under U.S.S.G. § 2A1.5. These basic pieces of evidence destroy any claim that Duggins could not have foreseen that someone in MS-13 might be part of a conspiracy to murder:

- In 2012, while he was an MS-13 member, Duggins pleaded guilty to committing armed assault with intent to murder (in a joint venture with another MS-13 member). Given that Duggins *himself* repeatedly stabbed someone multiple times during the period of the charged conspiracy to which he has pled guilty, Duggins has no credible argument that conspiracy to murder was not reasonably foreseeable as part of his membership in the MS-13 enterprise.

- In 2015 and then again in 2017, co-defendant Lopez was captured on recordings speaking at length about MS-13 and the Sykos clique. In both these recordings, Lopez (and other co-conspirators) discuss Duggins on multiple occasions. The recordings make clear that Duggins (known by his gang name of Haze) is one of the leaders of the clique, indicating that MS-13's core purposes were reasonably known by and foreseeable to him. *See, e.g.*, Govt. Sentencing Ex. 2, April 2015 Recording of Lopez et al., at page 4 (referring to Haze as a homeboy in the gang and the First Word of the clique); page 13 (discussing how Haze is always one step ahead of others and how he has repeatedly proved himself as a member of the gang); page 14 (discussing how Haze and three others helped get the clique going in 2006 and built the clique up over the years). *See also* Govt. Sentencing Ex. 3, Dec. 2017 Recording of Lopez et al., at page 14 (Lopez describing how he committed attacks on rivals with Haze); page 22 (same); page 24 (describing how Haze and Mayimbu joined the Sykos clique in Lynn instead of another MS-13 clique); page 37 (discussing a machete attack involving Haze).

- In the 2018 recording of co-defendant Salvador, there are multiple mentions of Haze not only being a leader in the clique, but also someone who had knowledge of Salvador's commission of acts involving murder, as well as someone who further encouraged Salvador to commit murder. *See* Govt. Sentencing Ex. 1, October 2018 Recording of Salvador, at page 8 (discussing how Haze knew about Perverso's prior murder and recruited him into the clique); page 16 (discussing how Haze was the First Word of the clique); page 36 (discussing how Haze gave Perverso guidance

on how to commit murder, advising him: "Look, when you go kill a son of a bitch, dude, invite any other dude except MAYIMBU, dude.").

- Finally, in his post-arrest interview in November 2018 (transcript attached as Ex. 12), although Duggins did not speak to law enforcement at length, at the very least, he admitted that he was an MS-13 member; admitted that he was a member of the Sykos clique; admitted that he was a homeboy who had multiple MS-13 tattoos; admitted that he had been in the gang for "almost more than a decade"; admitted that MS-13's "missions" or "beefs" were with the 18s (18th Street gang) and the Bloods; and admitted to knowing about the prior series of prosecutions in this District [which wiped out an entire generation of MS-13 members following convictions for RICO conspiracy involving murder and attempted murder].[2]

Based on all of the above alone—let alone all the additional information likely to be contained in the final PSR (such as how one cooperator stated that Duggins ordered the murder of a teenage girl named Blanca Lainez in 2016, how another cooperator stated that Duggins encouraged a retaliation hit against a witness in this case while in pretrial custody in 2019, etc.)—the Court may conclude with relative ease that Duggins' base offense level should be 33.

With a base offense level of 33 established, the government believes two enhancements can also be applied to Duggins with relative ease and without the need for evidentiary hearings:

*First*, the Court should apply a four-level enhancement based on Duggins being a leader or organizer of the Sykos clique. *See* U.S.S.G. § 3B1.1(a). Although the defendant

---

[2]     In the November 2018 interview, Duggins tried to minimize his recent MS-13 contact, stating that he had not talked to Erick Lopez and others in months, but of course, Lopez and three others had been in state custody since August 1, 2018 on the state firearm charge. The government went back and found at least two jail calls that Lopez and Duggins had while Duggins was in state custody. The calls only further confirmed Duggins' participation in the gang, as he checked up on the three younger gang members Corrupto, Perverso, and Peligroso—young gang members he would obviously have not known (and certainly not known by their gang names) had he not remained a member of the gang in recent years.

seems intent on challenging this application, there can be no reasonable objection as to his leadership position. Among other pieces of evidence, multiple witnesses have identified Duggins as the clique's First Word. Co-defendant Lopez, in two prior recordings, identified himself and Duggins as having run the clique for the better part of a decade. Co-defendant Salvador identified Duggins as the clique's leader and First Word during the October 2018 jailhouse recording. Even if Duggins was to claim that he stepped back from his leadership duties at some point—the government only needs to prove by a preponderance of the evidence that at *some point during the charged conspiracy*, Duggins had a leadership role. Even Duggins' (largely frivolous and now abandoned) withdrawal arguments did not support an argument that Duggins was *never* a leader or organizer in the Sykos clique.

*Second*, the defendant used or attempted to use minors in the commission of the RICO conspiracy offense under U.S.S.G. § 3B1.4, requiring a further two-level enhancement. It is well-known that the MS-13 gang often targets and recruits minors. Thus, there is little dispute that an MS-13 leader like Duggins, who was an established member of the gang for over a decade, knew (or it was at least reasonably foreseeable to him) that the gang would use a minor to further the gang's activities. Indeed, courts have held that for this enhancement to apply, a defendant does not need to have personally recruited or used minors to help facilitate a crime as long as the use of a minor was reasonably foreseeable. *See, e.g.*, *United States v. Corbett*, 870 F.3d 21, 34, n. 16 (1st Cir. 2017) (citing *United States v. Patrick*, 248 F.3d 11, 27-28 (1st Cir. 2001) for the proposition that in a conspiracy case, a defendant's "sentence could be enhanced based on his co-conspirator's reasonably foreseeable use of juveniles to further the [organization]'s activities").

Here, of course, the evidence establishes that Duggins himself used or attempted to use a minor to commit the RICO conspiracy offense. CW-24, who has provided significant evidence about Duggins, was under eighteen years of age for the entire period leading up to his arrest. Thus, CW-24's participation in the conspiracy and his interaction with Duggins (even if only to the lesser degree that Duggins might want to claim) proves that Duggins used a person under eighteen in the commission of the offense. Even if CW-24 had somehow been predisposed or otherwise inclined to participate in the conspiracy regardless of Duggins' recruitment or influence, the enhancement would still apply. *See United States v. Corbett*, 870 F.3d 21, 32-33 (1st Cir. 2017) ("3B1.4 reaches defendants who 'used or attempted to use' any 'person less than eighteen years of age'—without regard to the minor's propensity to obey or disobey the criminal laws…. ][Defendant's] predisposition argument also seems inconsistent with the purpose behind the enhancement: to protect minors. Reserving that protection only for law-abiding minors and withholding it from the minors who need it most would seem to frustrate that clear purpose.") (citations omitted). Lastly, after the arrests of Lopez [Mayimbu], Maltez [Corrupto], and others in August 2018, Duggins called Lopez in jail and, among other things, asked how Corru [Corrupto] was doing in juvie [juvenile detention]. There can be no reasonable objection to this point: Duggins knew about Corrupto's juvenile status.

Based on the guidelines above, and without getting into more complicated or contentious issues, the Court can find that the defendant's offense level is 33 (for conspiracy to murder) plus 4 (for leadership) plus 2 (for use of minors), resulting in an offense level of 39.

Given his obstructive post-arrest conduct and given his failure to accept even the core parts of his offense conduct, Duggins has not earned a reduction for acceptance of

responsibility under U.S.S.G. § 3E1.1.  "The defendant [bears] the burden of proving his entitlement to an offense-level reduction for acceptance of responsibility.  *United States v. deJesus*, 6 F.4th 141, 148 (1st Cir. 2021).  "It is common ground that acceptance of responsibility entails more than merely mouthing the vocabulary of contrition.  To the contrary, the defendant must persuade the sentencing court that he has taken full responsibility for his actions, and he must do so candidly and with genuine contrition." *United States v. Coleman*, 884 F.3d 67, 73 (1st Cir. 2018) (citations and quotations omitted).  However, even assuming for present purposes that Duggins is given a 3-level reduction for acceptance of responsibility, the guidelines above alone would result in an offense level of 36.

The draft presentence report found that Duggins is in Criminal History Category V.  At CHC V, even an OL of 36 would result in a guideline sentence over the statutory maximum of 240 months.  Thus, even giving Duggins significant benefits that the draft PSR (correctly) does not, the guideline range for Duggins is still easily at the statutory maximum of 240 months.

At bottom, in any number of different ways (including the different ways proposed by Probation), the Court can reasonably conclude that the guideline range for Duggins is 240 months.  The government proposes that one option for the Court to consider is that instead of needing to resolve the countless objections Duggins seems poised to make— including objections about whether the murder guideline should apply to him and whether he should receive credit for acceptance of responsibility—the Court can more easily find that, at the very least, the conspiracy to murder guideline is applicable.  Once the Court applies that guideline and reaches the statutory maximum of 240 months as proposed above, the Court can defer ruling on Duggins' various other objections.

II.   **The Statutory Maximum Applicable to Duggins is 240 Months.**

As indicated above, the draft PSR indicates that the guideline range (if not limited by the statutory maximum) would be life in prison. The draft PSR also concludes that murder (not just conspiracy to murder) was reasonably foreseeable to Duggins. Although Duggins will likely not see it this way, the defendant should consider himself fortunate that he is not facing a much higher potential sentence than the 240 months that the government is recommending now. If not for the statutory cap that applies in this case, both the guidelines and the section 3553(a) factors would call for an even higher sentence than the 240 months the government is now seeking. As charged, the RICO statute limits the Court to imposing a maximum sentence of 240 months when sentencing Duggins.

The government wishes to discuss the statutory maximum for Duggins because it has been the source of some confusion, and in this case, is leading to an anomalous result to the defendant's benefit. Duggins, despite being the leader of a violent racketeering enterprise where a large majority of his clique has pled guilty to committing murder, would typically have been expected to face the maximum potential penalty for violating the racketeering laws. The lower maximum penalty for Duggins is the result of an odd interaction between the federal RICO statute and Massachusetts state law.

As the Court knows, the RICO statute contains two alternate maximum penalties: one at 20 years (the maximum faced by Duggins) and one at life in prison (the maximum faced by all the other co-defendants). Given that "racketeering activity" is defined in the RICO statute to include "any act or threat involving murder…which is chargeable under state law," *see* 18 U.S.C. § 1961, legal practitioners often informally describe the difference between the two maximum penalties as 20 years for racketeering activity that did not involve murder and up to life in prison for racketeering activity that did involve murder.

That is generally but not always true. When Massachusetts law is applied to the framework, that informal line sometimes becomes an incorrectly drawn line.

Although the definitions provision in the RICO statute defines racketeering activity to mean "any act or threat involving murder...chargeable under state law," *see* 18 U.S.C. § 1961, the penalty provision of the RICO statute does not talk in terms of acts involving murder chargeable under state law. It instead refers to the maximum penalty increasing to life "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." 18 U.S.C. § 1963.

Based on the above, the maximum penalty for Duggins could not be increased to life in prison just because his racketeering activity included "an act or threat involving murder...which is chargeable under state law." To increase his maximum sentence, the government would have to prove his racketeering activity was based on racketeering activity for which the penalty under state law was life imprisonment. *See id.* That difference has been the source of some confusion in these types of cases. Under Massachusetts state law on murder, *only* first and second-degree murder are punishable by up to life in prison. Unlike many other states, in Massachusetts, conspiracy to murder is *not* punishable by up to life in prison. Thus, to increase the statutory maximum penalty for Duggins, the government could not just prove that his violation was based on conspiracy to murder, but instead, would have to prove that his violation was based on first- or second-degree murder. Further, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), any fact that increases the maximum statutory penalty must be found beyond a reasonable doubt. Accordingly, the government would have to prove beyond a reasonable doubt that Duggins's RICO violation was based on first- or second-degree murder.

As Probation found in the draft PSR, there is sufficient evidence to prove by a preponderance that the defendant's racketeering activity involved murder. And the government believes that it could prove beyond a reasonable doubt that the defendant's racketeering activity involved conspiracy to murder. However, given the state of the evidence, the government does not believe it can prove beyond a reasonable doubt that Duggins was involved in a first- or second-degree murder.

The government mentions all of this simply to highlight that if all the evidence against Duggins was exactly the same as it stands now, but Massachusetts state law were like some other states where conspiracy to murder is punishable by life in prison, Duggins would have likely been facing a maximum penalty of life in prison for RICO conspiracy, his guideline range would likely have been life in prison (as indicated in the draft PSR), and the government would have likely recommended a much higher sentence than 20 years. As things stand, the government requests that the Court impose the statutory maximum penalty of 20 years.

### III.   The Sentencing Factors Outlined in 18 U.S.C. § 3553(a) Support the Government's Recommended Sentence of 240 Months.

Duggins belongs to La Mara Salvatrucha or MS-13, one of the most violent criminal enterprises in the world. Examples of the horrific and senseless violence perpetrated by the gang have now been seen in numerous states across the United States, and this prosecution has highlighted shocking examples of the same.

Duggins, by even his own admissions, was a full "homeboy" in MS-13 at the time of his arrest. Duggins, by all accounts except apparently his own, is a leader of the Sykos Locos Salvatrucha clique of MS-13—a violent MS-13 clique that counted among its ranks at least six murderers:  Lopez, Salvador, Vaquerano, Tercero, Reyes, and Maltez.  The

defendant's commitment to MS-13 and the Sykos clique is not in serious dispute.  Indeed,

the gang's name is permanently emblazoned upon multiple areas of his body:







The defendant's own admissions and actions make clear that he was willing to kill

on the gang's behalf.  In 2012, Duggins pled guilty to *armed assault with intent to murder*

and related charges based on an incident in which Duggins *stabbed an innocent victim more than ten times in an attempt to murder him*.  If not for a good Samaritan coming to the victim's rescue, Duggins would possibly be serving life in prison right now for murder. Duggins committed this gruesome attack on a public street:



This attempted murder was committed during the date range of the charged RICO conspiracy.  As mentioned above, the government is endeavoring to avoid unnecessary guideline disputes at sentencing.  It is worth noting, however, that this attempted murder could conceivably, on its own, provide an independent and separate basis to reach the statutory maximum of 240 months.  Under U.S.S.G. § 2A2.1(a)(1), the offense level for assault with intent to commit murder is 33.  Under U.S.S.G. § 2A2.1(b)(1), there is a four-level enhancement for life-threatening bodily injury.  When combined with the leadership enhancement, counting this incident as relevant conduct alone provides a basis to impose the 240-month guideline sentence.

In any event, at the very least, this attempted murder conviction (for which Duggins received a sentence of only 4.5 years in state prison) demonstrates the danger posed by Duggins, his willingness to kill on behalf of the gang, and the fact that even spending years in prison for an attempted murder did not deter him from re-engaging with MS-13 members upon his release.

Given the 26 pages of PSR objections by Duggins, it is somewhat unclear how the final PSR will come out, making it difficult to determine which other parts of the offense conduct to highlight.  The government will likely supplement its filing as to Duggins after the final PSR is released but suffice to say that the draft PSR summarizes deeply troubling conduct by Duggins over a matter of years.  Among other things:

- Two different cooperating witnesses stated that Duggins authorized the murder of Blanca Lainez, a teenage girl stabbed to death in East Boston in 2016.  In the draft PSR, Probation has held Duggins responsible for murder by a preponderance of the evidence and has applied the first-degree murder guideline for this incident.

- On two different recordings, *see generally*, Ex. 2 and 3, fellow MS-13 leader Lopez made repeated mention of the defendant's historical connections to MS-13 and acts of violence committed by Duggins in the past.

-   A cooperating witness provided information about shootings in 2018 that Duggins was either present for or later learned about directly from that cooperator.

-   A cooperating witness provided information in 2019 that *while awaiting trial in this case*, Duggins obstructed justice by encouraging the co-defendants to seek out and try to murder CW-13 or his family for CW-13's role in making the damning October 2018 recording of Salvador.

-   On the October 2018 recording of Salvador, *see generally*, Ex. 1, Salvador discussed how Duggins not only knew about Salvador's 2016 murder in East Boston, but that Duggins recruited Salvador into the Sykos clique and tried to promote him despite (or perhaps because of) knowing about that murder.

-   Separately on the recording, Salvador discussed how Duggins gave him advice on how to be careful when committing murder.

-   Other evidence from both the Salvador recording and information from cooperating witnesses indicates that Duggins was an accessory after the fact to the July 2018 murder of Herson Rivas. Probation also gave Duggins an additional grouping for accessory after the fact to murder.

-   Although the government does not have evidence sufficient to prove that Duggins had prior knowledge of the July 2018 murder, toll records and phone analysis raise significant concerns. Phone records showed communications between Lopez, Duggins, and Kevin Avelar a/k/a Shadow (an unindicted co-conspirator who committed the 2012 attempted murder with Duggins) on the night of the murder. A search of the phone seized from Duggins showed that on the night of the murder, Duggins searched the internet for "whats the max penalty for armed assault to murder in ma."

Based on all of the above, it seems clear that this Court needs to send an appropriate and strong message to Duggins (and other MS-13 leaders like Duggins). Even after receiving a multi-year sentence for attempted murder in state court and even after seeing his entire generation of MS-13 gang members get lengthy prison sentences in federal court, Duggins was not deterred from re-engaging with MS-13 after his prior release from prison. The sentence imposed should not only help protect the public from further criminal activity by Duggins, but it should send a strong message to people like Duggins that re-engaging with MS-13 on even a reduced level will not be tolerated.

The point above about the need for deterrence is especially important in Massachusetts: given the significant enforcement activity in this District in recent years, there are numerous MS-13 members from prior cases who were convicted of lesser federal crimes but who were not convicted of RICO conspiracy involving murder.  Many of them will be getting released from prison in coming years.  (Some of the lowest-level MS-13 members from the *Recinos Garcia* case have *already* been released from prison.)  The Court's sentencing of Duggins can send an important message—re-engaging with MS-13 will be viewed very unfavorably by this court (even if, like Duggins, MS-13 members also start to live a more family-oriented life and start working).  The government does not discount the fact that Duggins was a working, family man for parts of the day.  But the fact that he also remained associated with MS-13 and was helping recruit and mentor the next generation of MS-13 killers is a deeply troubling fact deserving of just punishment.

The need for a strong sentence is arguably magnified because the government's investigations have revealed a tendency for local MS-13 clique leaders to generally step away from the day-to-day street violence once they reach leadership positions, and to then leave the stabbing and shooting to the up-and-comers who want to earn promotions to homeboy status.  [The arguments raised by Duggins about stepping away from the gang are not unique mitigating arguments.  They were seen on multiple occasions in prior cases.  Out of the dozens of MS-13 members prosecuted in this District in recent years, Lopez stands out as arguably the only defendant who was both a leader and was also personally present at the scene to help commit a murder.]

The MS-13 members who stabbed and hacked a teenage boy to death deserve a sentence of life or close to life in prison for their horrifying and deplorable crimes.  Given the sentences they are likely to receive, it would be unfair if their clique leader received a

slap on the wrist.  Duggins is already receiving a relative benefit based on how the RICO statute applies, and he should consider himself lucky to not be facing a higher potential sentence.  It would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, protect the public from further crimes of the defendant, or afford adequate deterrence for Duggins to receive an even lower sentence than the 240 months recommended by the government.

<u>**CONCLUSION**</u>

For the reasons stated in this sentencing memorandum and those to be advanced at the sentencing hearing of Duggins, the government respectfully requests that the Court sentence Duggins to 20 years (240 months) in custody, to be followed by 3 years of supervised release.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: /s/ Kunal Pasricha
KUNAL PASRICHA
KAITLIN R. O'DONNELL
Assistant United States Attorneys
District of Massachusetts

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By: /s/ Kunal Pasricha
KUNAL PASRICHA
Assistant United States Attorney
District of Massachusetts