UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERICK LOPEZ FLORES,<br>HENRI SALVADOR GUTIERREZ,<br>ELISEO VAQUERANO CANAS,<br>JONATHAN TERCERO YANES, and<br>DJAVIER DUGGINS,<br>        Defendants. | Cr. No. 18-10450-MLW |

**GOVERNMENT'S RESPONSE TO COURT ORDER (DKT. NO. 807)**

The government submits this response to the Court's order dated January 13, 2022 (Dkt. No. 807) regarding the upcoming sentencing hearings of the defendants,[1] now scheduled to begin on February 8, 2022. After conferring with counsel for the defendants, the government's position on the issues raised in the Court's order are as follows:

**(a)     Whether the Sentencing Hearings Can be Conducted by Video**

The government anticipates that each of the defendants will report that that they are amenable to a bifurcated hearing where they will consent to phase one of the hearing being conducted via videoconference (*i.e.*, hearing via Zoom). Phase one will be a non-evidentiary, video hearing during which the Court can decide certain presentencing issues (most notably, any guideline-based or otherwise material objections to the PSR), to be followed by a phase two, in-person hearing during which the parties will make their 18 U.S.C. § 3553(a) sentencing arguments and the Court will impose sentence in person.[2]

---

[1]     Similar to the Court's order at Dkt. No. 807, for purposes of this filing, the references to "defendants" do not include Marlos Reyes.

[2]     If the Court determines at the phase one hearing that an evidentiary hearing is needed on some topic, then that hearing should take place during the in-person phase.

As to what sentencing issues the parties should be argued at the phase one hearing, the government respectfully submits that the issues should be limited to those where there is something actionable for the Court to do: for example, decide a guideline calculation or rule on an objection to the presentence report ("PSR") or determine whether an evidentiary hearing is needed.  Generalized discussions about aggravating or mitigating factors (whether touching on the nature and circumstances of the crime or the history and characteristics of the defendant) should be left for the in-person portion of the hearing where the parties can discuss whatever 18 U.S.C. § 3553(a) factors they believe are most appropriate as to their individual cases.

The government believes there should be minimal repetition between the phase one and phase two proceedings.  Phase one should result in certainty about each defendant's guideline range.  Phase two should then involve argument on where within or outside the guidelines each defendant should be sentenced.  Once all the guideline issues and PSR objections are resolved in phase one, the in-person phase two proceeding can proceed directly to sentencing arguments of counsel, victim impact statement (if any), and defendant allocution (if any).

**(b)     The Objections to Each Defendant's Presentence Report That Affect the Calculation of the Guideline Sentencing Range.**

The government anticipates that each of the defendants will identify, as required by the Court's order, those objections to each defendant's presentence report that affect the calculation of their respective Guidelines Sentencing Range.  For its part, the government notes that it also made certain objections to each defendant's PSR. The material objections by the government that it believes should be resolved at the phase one hearing are identified below as to each defendant.

Importantly, the government hereby proposes a framework that it believes may significantly streamline the sentencing process as to each defendant and obviate the need for the Court to make formal rulings on dozens of defense objections. Specifically, the government proposes that the Court begin the phase one portion of the sentencing hearings by first ruling on the limited number of government objections identified below (as opposed to starting with the defense objections). Among other reasons, the government's objections are far fewer in number (generally only one or two per defendant), are more amenable to resolution through simple legal argument, and are even listed first in each defendant's presentence report.

The practical benefit of this approach is that *if* the Court rules in the government's favor on some of these objections, each defendant's guideline range will already be at his statutory maximum (*i.e.*, life in prison for the murder defendants and 20 years in prison for Duggins). Consequently, even before turning to the dozens of objections by the defendants, a resolution of one or two key issues may render immaterial most if not all of the defense objections, at least as they relate to the Sentencing Guidelines. The parties can then appear in-person to make their 18 U.S.C. § 3553(a) arguments.

The government accordingly proposes that the Court resolve, at the very least, the following objections by the government. Resolution of these few government objections first might obviate the need for extended arguments about guideline calculations and might otherwise render immaterial most of the defense objections.

(i)     Erick Lopez Flores a/k/a Mayimbu

In the Lopez PSR, the U.S. Probation Office calculated his guideline range to be life in prison. Lopez made 76 objections to the PSR. The government made four objections. Out of its four objections, the government requests that the Court first (and perhaps only)

resolve government objection #4: whether the vulnerable victim enhancement should apply under U.S.S.G. § 3A1.1(b)(1). Lopez PSR, p. 75. The government does not view its remaining objections as requiring resolution for present purposes.

The reason to resolve this one objection—even though Lopez's guideline range is life in prison even without this enhancement—is that this is an issue common to all other murder defendants (since the government has sought this enhancement for all). In analyzing the facts and circumstances of the Rivas murder, the victim either was or was not vulnerable. There should not be an internal inconsistency where the Court finds that the victim was vulnerable as to Lopez but not as to Salvador, etc. Thus, this vulnerable victim issue should be resolved consistently as to each murder defendant.

Notably, as to Lopez, this issue should require little to no argument because the parties *agree* that the vulnerable victim enhancement should apply. *See* Lopez Plea Agreement, § 3(d). Counsel for the government and Lopez have conferred and intend to continue honoring the terms of the Plea Agreement (including the agreement as to how the Guidelines should apply). Accordingly, the government anticipates that Lopez will *not* oppose the application of this enhancement as to him. The Court should sustain the government's objection, impose the vulnerable victim enhancement as agreed upon by the parties (and as supported by the facts), and find that Lopez's Guideline Sentencing Range is life in prison.

From the government's perspective, no more is needed as to Lopez in phase one of the sentencing hearing. This finding would render immaterial (as a Guidelines matter) the 76 objections filed by Lopez. Lopez can, of course, ask the Court to make formal rulings on as many or as few of those objections as he wants, but the government's view is that those objections are unlikely to be material to the calculation of the Guidelines or

4

the imposition of the sentence. Separately, the government also intends to honor the terms of the Plea Agreement between the parties (including the agreement on how the Guidelines should apply), and accordingly, the government does not seek (or need to seek) additional enhancements. Lopez's guideline range is life in prison, and the parties can make their respective 18 U.S.C. § 3553(a) arguments in person as to what sentence the Court should impose.

(ii)     Henri Salvador Gutierrez a/k/a Perverso

In the Salvador PSR, the U.S. Probation Office calculated his Guideline Sentencing Range to be life in prison. Salvador made 22 objections to the PSR. The government made three objections to the PSR. Out of those three objections, the government requests that the Court first resolve objection #1: whether the vulnerable victim enhancement should apply. *See* Salvador PSR, p. 68. There are two reasons to resolve this issue:

*First*, as stated above, the need to minimize unwarranted sentencing disparities requires that the victim be consistently treated as either vulnerable or not. Each of the murderers who pled guilty pursuant to a plea agreement in this case—Lopez, Tercero, and Reyes—agreed that the victim was vulnerable. For the reasons stated in the government's objection, the enhancement should also apply to Salvador and Vaquerano.

*Second*, if the Court sustains this objection and rules in the government's favor on this point, it again renders all of the objections by Salvador as immaterial to the guideline calculation.[3] It similarly removes the need to resolve the government's other objections.

---

[3]     For example, Salvador is objecting to an enhancement for using a minor in the commission of the offense. *See* Salvador Objection #22. Probation correctly applied this enhancement as to all defendants. But even if the Court were to sustain this objection by Salvador and remove this enhancement as to him—which it should not do—Salvador's guideline range would still be life in prison if the vulnerable victim enhancement applies.

Even if just this one enhancement applies, Salvador's guideline range is life in prison. And if this one guideline applies, Salvador's guideline range would be life in prison even if the Court were to sustain all 22 of Salvador's objections.

      (iii)    <u>Eliseo Vaquerano Canas a/k/a Peligroso</u>

In the Vaquerano PSR, the U.S. Probation Office calculated his guideline range to be 360 months to life in prison. The government believes this is incorrect and his guideline range—like that of the other murderers—should be life in prison.

Vaquerano made 30 objections to the PSR. The government made two objections to the PSR. The government requests that the Court first resolve government objection #1: whether the vulnerable victim enhancement should apply. Vaquerano PSR, p. 67. The arguments for doing that are the same as above: among other things, the need for internal consistency on how this issue is resolved. Assuming the Court rules in the government's favor on the vulnerable victim issue, Vaquerano's guideline range would also be life in prison if the other guideline applications stay the same.

The government's view is that the only one of the 30 objections by Vaquerano that may additionally need to be resolved as a guideline matter is Vaquerano Objection #27 (PSR at p. 80), where Vaquerano objects to the enhancement for use of a minor. This objection by Vaquerano should be overruled/denied. This objection cites to certain out-of-circuit law and does not capture the scope of the defendant's conduct or his role in the conspiracy. The Probation Office correctly applied the enhancement (as to not only Vaquerano, but also as to Lopez, Salvador, Tercero, and Reyes; and out of that group, all three who entered into written plea agreements—Lopez, Tercero, and Reyes—agreed that the enhancement should apply). Both the facts and the law support the enhancement.

*First*, as a general matter, the presentence report makes clear that recruiting minors is a core operating principle of MS-13 and MS-13 cliques regularly recruit minors into the gang. The First Circuit has plainly held that for this enhancement to apply in a conspiracy case, a defendant does not need to have personally recruited or used minors to help facilitate a crime as long as the use of a minor was reasonably foreseeable. *See, e.g.*, *United States v. Corbett*, 870 F.3d 21, 34, n. 16 (1st Cir. 2017) (citing *United States v. Patrick*, 248 F.3d 11, 27-28 (1st Cir. 2001) for the proposition that in a conspiracy case, a defendant's "sentence could be enhanced based on his co-conspirator's reasonably foreseeable use of juveniles to further the [organization]'s activities"). Here, there is little dispute that the MS-13 gang often recruits minors and that an MS-13 homeboy like Vaquerano, who was an established member of the gang, knew (or it was at least reasonably foreseeable to him) that the gang would use a minor to further the gang's activities.

*Second*, as a specific matter, there is overwhelming proof that Vaquerano himself used or attempted to use a minor to commit the RICO conspiracy offense. CW-24—with whom Vaquerano committed murder and may have even committed attempted murders in furtherance of the MS-13 enterprise—was under eighteen years of age for the entire period of the charged conspiracy. CW-19 is another example of a minor who provided reliable evidence about Vaquerano's recruitment, supervision, or use or attempted use of a minor. Even if Vaquerano were to contend that CW-24 was somehow already predisposed to commit crime regardless of whether he was recruited or encouraged by Vaquerano to commit crime, the First Circuit has already rejected such arguments. *See United States v. Corbett*, 870 F.3d 21, 32-33 (1st Cir. 2017) ("3B1.4 reaches defendants who 'used or attempted to use' <u>any</u> 'person less than eighteen years of age'—without

7

regard to the minor's propensity to obey or disobey the criminal laws....] [Defendant's] predisposition argument also seems inconsistent with the purpose behind the enhancement: to protect minors. Reserving that protection only for law-abiding minors and withholding it from the minors who need it most would seem to frustrate that clear purpose.") (citations omitted).

Once these common and core guideline issues are decided and applied to Vaquerano consistently and the other defendants, his guideline range, like the guideline range of the other murderers, becomes life in prison. The government's view is that the Court would then not need to rule on most of the other objections by Vaquerano as they are unlikely to affect the guideline sentencing range or be material to the Court's sentencing decision. The Court having decided the guideline sentencing range and ruled on any material objections at the phase one remote hearing, the parties can then proceed to the phase two hearing where they can make their respective 18 U.S.C. § 3553(a) arguments in person.

(iv)    Jonathan Tercero Yanes a/k/a Desalmado

In the Tercero PSR, the U.S. Probation Office calculated his guideline range to be 360 months to life in prison. The government believes this is incorrect and his guideline range—like that of the other murderers—should be life in prison. In fact, the parties agreed in the plea agreement that the guideline should be life in prison.

Tercero made 23 objections to the PSR. The government made two objections. Out of its two objections, the government requests that the Court first (and perhaps only) resolve government objection #1: whether the vulnerable victim enhancement should apply under U.S.S.G. § 3A1.1(b)(1). Tercero PSR, p. 73.

As in Lopez's case, resolving this issue should require little to no argument in Tercero's case because the parties *agree* that the vulnerable victim enhancement should apply. *See* Tercero Plea Agreement, § 3(c). Counsel for the government and Tercero have conferred and intend to continue honoring the terms of the Plea Agreement (including the agreement as to how the Guidelines should apply). Accordingly, the government anticipates that Tercero will *not* oppose the application of this enhancement as to him. The Court should sustain the government's objection, impose the vulnerable victim enhancement as agreed upon by the parties (and as supported by the facts), and find that Tercero's Guideline Sentencing Range is life in prison.

From the government's perspective, no more is needed as to Tercero in phase one of the sentencing hearing. This finding would render immaterial (as a Guidelines matter) the 23 objections filed by Tercero and remove the need for the Court to resolve the government's other objection. Tercero can, of course, ask the Court to make formal rulings on as many or as few of those objections as he wants, but the government's view is that those objections are unlikely to be material to the calculation of the Guidelines or the imposition of the sentence. Tercero's guideline range should be determined to be life in prison, and the parties can make their respective 18 U.S.C. § 3553(a) arguments in person as to what sentence the Court should impose.

(v)     Djavier Duggins

In the Duggins PSR, the U.S. Probation Office calculated his guideline range to be the statutory maximum of 240 months in prison. (Indeed, the Probation Office calculated his initial guideline range to be life in prison, but given the statutory maximum in place, his guideline range is 240 months.)

Duggins made 36 objections to the PSR. The government made three objections. Again, the government's proposed approach of prioritizing certain key objections would significantly streamline the material issues vis-à-vis the guideline calculations. Before turning to which objections the Court should prioritize and rule on, the government notes one key contextual point: the PSR concluded that the defendant's "adjusted offense level" was 47 [reduced to the maximum offense level of 43] and that Duggins is in criminal history category V. *See* PSR, ¶¶ 164, 167, 176.

This is an important point because if Duggins is in criminal history category V and the statutory maximum is 240 months, then a review of the sentencing table shows that any final offense level of 35 or higher would exceed the statutory maximum. The guideline range for OL 35 and CHC V is 262-327 months, and the guideline range for OL 34 and CHC V is 235-293 months. Thus, once the calculation of the defendant's offense levels reaches those levels, all additional offense conducts and/or guideline enhancements become immaterial and extraneous for guideline purposes. That is a critical point that may obviate the need for the Court to rule on contentious issues such as whether Duggins should be held responsible for an additional group based on his role in the murder of Blanca Lainez; whether Duggins should be held responsible for being an accessory after the fact to the murder of Herson Rivas; and even whether Duggins and others conspired to obstruct justice or retaliate against a witness during the incident at Wyatt.

The government proposes that the Court first tackle three more easily-decidable objections as to Duggins, which may render moot all other guideline issues: Government Objection #1 (whether Duggins should get a grouping for conspiracy to murder); Government Objection #2 (whether Duggins should get an enhancement for the use or attempted use of a minor in the commission of the RICO conspiracy offense to which he

pled guilty); and the standing objections and various specific objections by Duggins that relate to whether he should be given an enhancement for his leadership role. *See, e.g.*, Duggins Objection #1 (stating, *inter alia*, that "Duggins denies that he acted in the capacity as a leader at any point in time during his tenure with MS-13, and most certainly during the time of the Lainez and Rivas murders. As a result, Duggins would object to any such enhancement assessed by Probation under USSG § 3B1.1").

These three key issues can be decided without any evidentiary hearing and based solely on legal argument and the record before the Court. If the Court agrees with the government on these three points, then the result would be that Duggins would be at offense level 33 (for conspiracy to murder) + 4 (for leadership) + 2 (for use or attempted use of minor) resulting in an offense level of 39 on these issues alone.⁴ Even assuming Duggins is then given credit for acceptance of responsibility—which Probation has *not*

---

⁴ Even the U.S. Probation Office agrees that an offense level of 33 for conspiracy to murder is a floor in this case. Probation has increased the offense level to 43, but even Probation believes that the fallback position if the Court does not impose offense level 43 is not a base offense level of 19, but rather, an offense level of 33. *See* Probation Officer's Response to Government Objection #1, PSR, ¶ 74-75 (stating that Probation increased the offense level based on the cross references between U.S.S.G. §§ 2A1.5(c)(1) and 2A1.1, but then noting):

> If the Court makes those alternative rulings, in light of the evidence in this case, the Probation Office believes the Court could find that the defendant participated in a conspiracy to murder cooperators and gang rivals in furtherance of the racketeering enterprise. There is ample evidence in the offense conduct which indicates that the defendant was the leader of an MS-13 clique and that he conspired with, recruited, encouraged, and solicited others to commit murder on behalf of the MS-13 enterprise.  ... The Probation Office believes that based on the specific evidence and facts of this case, if the Court disagrees with the Probation Office's analysis of the guidelines, then the Court should use the offense level applicable to the underlying racketeering activity (conspiracy to murder) pursuant to U.S.S.G. §§ 2E.1.1(a)(2) and 2A1.5(a) for a base offense level of 33, rather than reverting to a base offense level of 19 per U.S.S.G. § 2E1.1(a)(1) as defense counsel suggests.

PSR at p. 75.

given to Duggins based on his conduct—that would still result in an offense level of 39 minus 3, resulting in a final offense level of 36. At that point, with numerous applicable enhancements and groupings left to decide, Duggins would already be at his statutory maximum of 240 months based on his criminal history category of V.

In determining the various guideline issues, once the Court reaches the statutory maximum of 240 months as a guideline matter, the government has little interest in continuing to pursue additional enhancements that do not affect the guidelines. Assuming the Court reaches a guideline range at the statutory maximum of 240 months based on the simplified approach above, the Court likely does not need to decide whether Duggins should also get an additional group for the murder of Blanca Lainez, an additional group for being an accessory after the fact to the murder of Herson Rivas, an additional enhancement for obstruction of justice, and a loss of reduction for acceptance of responsibility. The evidence about all of those issues (and the objections on all of those points) can remain in the PSR for informational purposes, but the Court may be in a position to conclude that the remaining objections do not need to be decided because they would not affect the guideline range or materially impact the Court's sentencing analysis.

Once the Court determines in the phase one hearing that Duggins is at the statutory maximum of 240 months as a guideline matter, the parties can come back for the in-person phase two hearing to make their respective sentencing arguments and discuss the 18 U.S.C. § 3553(a) factors. Alternatively, if the Court does not find in the government's favor on those points and live issues remain that may impact the guideline analysis, then the Court may have to determine, one-by-one, the various other sentencing objections made by Duggins and the government.

### (c) Additional Evidence That May be Relevant for Court to Consider

Notwithstanding the framework proposed above—where the government suggests that the Court may not need to decide evidentiary issues such as evidence concerning any involvement in the murder of Blanca Lainez, etc.—to supplement the record and provide additional information that the parties may wish to reference or rely on as part of the sentencing process (or information that the government was otherwise instructed by the Court to provide), the government is also submitting today a motion to seal certain supplemental exhibits, including interviews with CW-24 and CW-27 regarding the murder of Blanca Lainez, information provided by CW-19 regarding the discussions prior to the murder of Herson Rivas, and an FBI report regarding information provided by CW-27 regarding discussions at Wyatt.

### (d) Briefing on *Santobello/Canada* Issues

The government's sentencing positions are not inconsistent with its obligations under *Santobello v. New York*, 404 U.S. 257 (1971) or *United States v. Canada*, 960 F.2d 263 (1st Cir. 1992). The government also does not believe any defendant is alleging a *Santobello/Canada* violation.

In *Santobello*, the Supreme Court declared that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262. In *Canada*, the First Circuit found a violation of that obligation and vacated a sentence where the government "paid 'lip service' to the negotiated agreement," "failed affirmatively to recommend [the agreed-upon sentence of] 36 months," "conspicuously undermin[ed] its agreed position," essentially "cut off the government's agreement at the knees," and "breached its plea agreement." 960 F.2d at 269-270.

Here, the government has not come close to doing anything of the sort. To the contrary, the government has complied with both the letter and spirit of its obligations under the plea agreement. Taking Lopez as an example for illustrative purposes:

*First*, under the plea agreement, the government agreed to recommend a sentence of incarceration for a term of imprisonment of 600 months (50 years). Plea Agreement, § 4. The government has done so unequivocally and forcefully in two separate sentencing memoranda, *see* Dkt. No. 748 (Government's Sentencing Memorandum as to Lopez) and Dkt. No. 782 (Response to Lopez's Sentencing Memorandum). The government also anticipates unequivocally and forcefully recommending a 50-year sentence at Lopez's sentencing hearing. There is no violation here.

*Second*, under the plea agreement, Lopez and the government agreed that the defendant's total offense level under the Guidelines is the maximum offense level of 43. Plea Agreement, § 3 (also setting forth how the parties calculated that number). The government has remained true to that agreement. Indeed, the government is seeking to enforce some of those agreed-upon guidelines even though Lopez's guideline range is otherwise already at life in prison. *See supra* at p. 4 (seeking an enhancement for vulnerable victim because that was agreed upon in the Plea Agreement). There is no violation here.

*Third*, to the extent the government is placing other evidence before the Court on issues such as Lopez's potential involvement in the murder of Blanca Lainez, doing so does not violate its obligations either. To the contrary, the Plea Agreement, the U.S. Sentencing Guidelines, and federal law all contemplate the government placing additional information in front of the sentencing court. *See* Plea Agreement, p. 2 ("Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S.

14

Probation Office with accurate and complete information regarding this case."); U.S.S.G. § 1B1.4 ("In determining the sentence to impose ... the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."); 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

### (e)  Potential Witness Testimony and Justification for Same

The government does not request an opportunity to have witnesses testify at either the phase one or phase two hearing because the government continues to believe that no evidentiary sentencing hearing is needed as to any defendant. If the Court determines at a future date that it must conduct an evidentiary hearing to resolve a material factual dispute in advance of imposing sentence, the government will identify and present witnesses responsive to whatever issue may arise. At present, the government does not believe it is necessary for the Court to hear from any witness.

### (f)  Potential Conflict with Proposed Schedule

Counsel for the government do not have any conflicts with the sentencing hearings now scheduled for February 8 to 16, 2022.

### (g)  Any Other Issues Relevant to Sentencing

The government previously submitted a sentencing memorandum as to each defendant (Lopez, Salvador, Vaquerano, Tercero, and Duggins) as well as a responsive memorandum as to Lopez, Salvador, Vaquerano, and Tercero. The government did not previously respond to the Duggins sentencing memorandum because his final PSR was not out yet and countless issues remained in dispute. Given how things are now poised,

15

the government is filing a responsive memorandum later today to address a few issues in response to the sentencing memorandum filed by Duggins. The government will respond next week, as authorized by the Court, to any additional filings made by the defendants today on issues relevant to sentencing.

                              Respectfully submitted,

                              JOSHUA S. LEVY
                              First Assistant United States Attorney

                  By:  /s/ Kunal Pasricha
                              KUNAL PASRICHA
                              KAITLIN R. O'DONNELL
                              Assistant United States Attorneys
                              District of Massachusetts

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By: /s/ Kunal Pasricha
KUNAL PASRICHA
Assistant United States Attorney
District of Massachusetts